RICHARD L. ROSENTHAL,

*vs.*

BURRY BISCUIT CORPORATION, a Delaware corporation, and GEORGE W. BURRY.

*New Castle, June 16, 1948.*

*Arthur G. Logan,* of the firm of Logan, Duffy & Boggs, for plaintiff.

· *John J. Morris, Jr. and Howard L. Williams,* of the firm of Hering, Morris, James & Hitchens, (*James V. Mc-Namara,* of Paterson, N. J., of counsel), for defendants.

*David F. Anderson*, of the firm of Southerland, Berl & Potter), *amicus curiae.*

SEITZ, Vice-Chancellor: This is the decision on defendants' motion to dismiss the amended complaint for failure to state a cause of action, and for the reason that the plaintiff was not a stockholder of record at the time of the transaction of which he complains.[1]

The factual allegations of the amended complaint are taken to be true for purposes of disposing of the motion to dismiss. I shall therefore set forth the allegations at some length.

Between April 23 and May 16, 1945, plaintiff purchased 2,500 shares of the common stock of Burry Biscuit Corporation (hereinafter called the "Corporation"), and the stock so purchased was represented by street certificates standing in the names of brokers. On January 28, 1946, plaintiff caused his stock to be transferred into his name upon the books of the Corporation.

The defendant Corporation is a Delaware corporation engaged in the manufacture and sale of biscuits, crackers and related products. The Corporation's annual report for the fiscal year ending October 31, 1945, showed that it had then outstanding 405,224 shares of common stock.

The individual defendant George B. Burry (hereinafter called "Burry") has at all times since the organization of the Corporation been its president and a member of its board of directors. On January 18, 1946, Burry was, and still is,[2] the owner of 44,890 shares of the Corporation's common stock. Burry has selected, dominated and controlled the board of four directors at all times since

---

[1] Although this suit was filed before the new Chancery Court Rules took effect, the parties have now assumed that it should be disposed of under the new rules. The court will also proceed on that assumption.

[2] The complaint was filed September 12, 1946, and the parties have proceeded in a leisurely fashion since that date.

the organization of the Corporation, and through the solicitation of management proxies he and his nominees have controlled all meetings of stockholders.

Burry has received a substantial salary for services rendered by him since the organization of the Corporation. His salary has always consisted of a fixed amount, plus an amount equal to 3% of the consolidated net profits after taxes of the Corporation and its subsidiaries. The fixed part of his salary started at $12,000 for the first year and was gradually increased until in January of 1945 the board of directors authorized the payment of a salary to Burry of $30,000 per year plus 3% of the net profits. An estimate of Burry's percentage of profit for the fiscal year ending October 31, 1945, was approximately $7,800. With the elimination of the corporate excess profit taxes in 1946, the corporate profits after taxes were anticipated to be much greater with a consequent increase in Burry's compensation.

Starting with a fiscal year 1946, Mr. Burry will receive as compensation for his services to the Corporation and its subsidiaries under the January, 1945, resolution of the board of directors in excess of $50,000 per year.

On September 28, 1945, the Burry-dominated board of directors passed a resolution granting Burry an option to purchase at any time within 5 years from September 28, 1945, 50,000 shares of the common stock of the Corporation at $6.00 per share. The resolution further provided that the 50,000 shares might be purchased at one time, or in such amounts and at such times as Burry desired, but that no part of the option could be exercised within 6 months from September 28, 1945. It further provided that if Burry resigned or was discharged, or died prior to the expiration of the option, he or his estate, as the case might be, might take up the unexercised portion of the shares of stock purchasable under the option within 6 months from the date of such resignation, discharge, or death. The resolution granting the option stated that it was being granted

"in order to afford George W. Burry an opportunity to acquire by investment a substantial interest in the corporation." This resolution, which is now under attack, was passed while plaintiff was the equitable but not the registered owner of his stock.

Plaintiff alleges that no consideration was paid or given by Burry or received by the Corporation for the option, and that it was not granted in consideration of any services rendered, but was and still is a gift.

When the option was granted, the Corporation's common stock was and still is listed on the New York Curb Exchange. On the option date 2,700 shares of the Corporation's common stock were sold at prices ranging from a low of 6-7/8 to a high of 7-1/8, the closing price being 7-1/8. For the week ending Friday, September 28, 1945—the date the option was granted—18,200 shares were sold on the Curb Exchange for a high of 7-3/8 and a low of 6-5/8.

The Corporation's stock had been rising in value for some time prior to September 28, 1945, and Burry and the other directors at that time saw that the net sales of the Corporation were rising steadily and rapidly and that profits were rapidly increasing. They knew or were in a position to know that for the fiscal year ending October 31, 1945, the corporate records would show vastly increased sales, and profits more than doubling those for the previous fiscal year. They likewise knew or should have known that by virtue of the proposed elimination of the excess profits taxes the Corporation's common stock would probably rise sharply in value. At the same time, Burry and his associates had plans for the future development of the Corporation to broaden the scope of future operations, and they believed the Corporation held great promise for expansion and greater profits.

After the release of the results of operations for the fiscal year ending October 31, 1945, the Corporation's com-

mon stock rose to more than $11.00 per share, and it is alleged that even at the current recession of prices (September, 1946, when the original complaint was filed) the stock was selling at $9.00 per share. At the time the option was granted, the common stock had a "value" in excess of the option price.

At the time the resolution granting the option was passed, Burry agreed to take steps to have the Corporation engage the Carlton M. Higbie Corporation, of which Carlton M. Higbie[3] was an officer, director and the principal controlling stockholder, to act as an underwriter on highly advantageous terms in connection with the sale of securities to raise new capital. After the passage of the resolution granting the option to Burry (I infer that Higbie voted therefor), the Higbie Corporation was made an underwriter and syndicate manager in connection with the issuance of the Corporation's preferred stock. The Higbie Corporation received substantial commissions and warrants to purchase the Corporation's common stock for these services. The warrants were so advantageous that the SEC required the Corporation to indicate in its proxy statement the effect of their issuance.

At a meeting of the Corporation's stockholders held on February 8, 1946, Burry and two of his nominees acting as proxies for stockholders whose proxies were solicited by the management voted in favor of a resolution ratifying the granting of the option to Burry. Plaintiff objected by letter to the proposed action.

Plaintiff then sets forth the reasons why the derivative action is necessary.

Plaintiff prays that the Corporation be enjoined from recognizing the option or issuing stock thereunder, and that the court declare the option is and at all times has been null and void.

---

[3] A director of the Corporation.

The foregoing factual recital contains the substance of the amended complaint. Also, the parties have stipulated that the Corporation has the usual bylaw providing that it is entitled to treat the record stockholder as the holder in fact, and is not bound to recognize any equitable claim to the stock save as provided by Delaware law.

Defendants first move to dismiss the amended complaint for failure to state a cause of action.

The defendants contend initially that the allegations of the amended complaint fail to comply with the requirements of *Chancery Court Rule* 9 (*b*) which, insofar as here pertinent, provides:

"In all averments of fraud * * * the circumstances constituting fraud * * * shall be stated with particularity."

Defendants say that the plaintiff is merely alleging a legal conclusion when he alleges that the option was granted without consideration. They say that the quoted rule requires him to set forth facts from which such an inference can be drawn. Certainly the complaint sets forth with reasonable particularity the facts surrounding the passage of the resolution granting the option. Under the allegations of the complaint setting forth the terms of the option itself, there is nothing to show that Burry is under any obligation to purchase the stock, or that he is under any obligation to continue working for the Corporation, or that the granting of the option is otherwise connected with the proper exercise of business judgment. Under the circumstances, it is difficult to see just how the plaintiff could allege more than that the granting of the option was a gift; the granting of a valuable right without consideration. The allegation as here employed necessarily possesses both a legal and a factual aspect; legal in that it is an allegation of the very point for decision, but factual in the sense that it negatives the receipt of anything constituting legal consideration.

I feel that the plaintiff has set forth the circumstances

constituting the alleged fraud with the required particularity and the only question is whether, for purposes of disposing of the motion to dismiss, the allegations of the amended complaint state a cause of action.

While a corporation may under proper conditions grant an option to its officers to purchase its stock, the corporation must receive some consideration in return, and if that consideration is to be in the form of services, their value must bear some reasonable relation to the value of the right given. See *Wyles v. Campbell, et al., (D.C.) 77 F.Supp.* 343; *Holthusen v. Budd Mfg. Co., (D.C.) 52 F.Supp.* 125. Stockholders, of course, cannot ratify the making of a gift where there is minority objection.

At the present stage the court is confined to the facts set forth in the amended complaint. Briefly, they show that the Corporation's board of directors—dominated by its president—granted its president a five year option to purchase 50,000 shares of its stock at $6.00 per share, which was below its then market value. The sole stated purpose of the granting of the option was to give the president an opportunity to acquire by investment a substantial interest in the Corporation; although at the time he owned approximately 11% of the outstanding common stock.

So far as the complaint shows, the valuable option was not granted in return for Burry's coming with or remaining with the Corporation. Indeed, he was already receiving a substantial salary, plus incentive in the form of a percentage of net income. Moreover, the stock was then "worth" on the market more than the option price. Consequently, the question of giving some additional incentive to a corporate official by way of a stock option is not shown under the pleadings to have any legally recognizable importance.

So far as the allegations of the amended complaint show, the valuable option right was granted without consideration since, unexplained, the desire of the directors

to give an officer an opportunity to acquire a substantial interest by investment does not constitute legal consideration for the granting of such an option. Consequently, on the present pleadings I must infer that a controlled board of directors has given valuable corporate property to the corporate officer and director controlling the board without receiving consideration in return. It is not now a question of whether the directors have exercised proper business judgment, since the allegations of the amended complaint leave no room for the application of that principle at this stage.

The attempted stockholder ratification not being unanimous was ineffective. *Eshelman v. Keenan,* 21 *Del. Ch.* 259, 187 *A.* 25; *Holthusen v. Budd Mfg. Co., (D.C.)* 52 *F.Supp.* 125.

The motion to dismiss the amended complaint on the ground that it fails to state a cause of action is denied.

Must the amended complaint be dismissed because the plaintiff was the equitable but not the record owner of his stock at the time of the transaction of which he complains?

The defendants contend that without regard to *Section 51A* of the *General Corporation Law of Delaware, Rev. Code* 1935, § 2083A, *as added by* 45 *Del. Laws, c.* 157, the plaintiff, being the equitable but not the record owner of his stock at the time of the transaction of which he complains, is not entitled to maintain their derivative action. Secondly, they urge that *Section 51A* of the *General Corporation Law* requires the same conclusion. Plaintiff and *amicus curiae* contend that either under *Section 51A* or under the common law applicable to this situation the plaintiff as the equitable owner of stock is entitled to maintain this derivative action.

This problem can best be approached by first considering the effect of *Section 51A,* and then considering the situation in the light of the construction placed thereon.

*Section 51A* was adopted by the Delaware legislature in 1945 and provides as follows:

"In any derivative suit hereafter instituted by a stockholder of a corporation organized under the laws of this State, it shall be averred in the Bill of Complaint that the Complainant was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law."

Under the Delaware law as it existed prior to the enactment of this statute, in order to maintain a derivative action, a stockholder was not required to be the owner of the shares at the time of the transaction of which he complained. *Blair v. F. H. Smith Co.*, 18 *Del.Ch.* 150, 156 *A.* 207; *Scully v. Automobile Finance Co.*, 11 *Del.Ch.* 355, 101 *A.* 908; *Ellis v. Penn Beef Co.*, 9 *Del.Ch.* 213, 80 *A.* 666; see 148 *A.L.R.* 1094. Consequently, it is apparent that without regard to the registered versus equitable owner problem, the statute effected a substantial change in the Delaware Corporation Law. After its passage, a stockholder filing a derivative action was required to allege and therefore to prove that he was a stockholder at the time of the transaction of which he complained, or that his stock devolved upon him by operation of law.

Counsel point out, and the court takes note of the fact that the language of *Section 51A* in its substance may be traced back to the language of the court in the case of *Hawes v. Oakland*, 104 *U.S.* 450, 26 *L. Ed.* 827. Thereafter, the substance of the decision in the *Hawes* case was adopted first as *Federal Equity Rule* 94, 28 *U.S.C.A.* § 723, Appendix, and later as *Federal Equity Rule* 27 by the United States Supreme Court. It now constitutes part of *Rule* 23 (*b*) of the *Federal Rules of Civil Procedure*, 28 *U.S.C.A.* following *Section 723c.*

As already noted, many courts, including Delaware, did not follow the rule of the *Hawes* case. Subsequently, several states, including Delaware, enacted statutes adopting the rule of the *Hawes* case to the extent of requiring a derivative action to be maintained by a person who was

a stockholder at the time of the transaction of which he complains.

Plaintiff and *amicus curiae* suggest that I may look to the federal decisions to see how they have construed the word "stockholder" as employed in the Federal Rule. They cite *Koeppel v. E. I. du Pont de Nemours & Co.*, 8 *W.W.Harr.* 542, 194 *A.* 847, for the rule that where a statute is adopted incorporating the terms of a statute of another jurisdiction, the later statute is to be given the same construction as has been given to the statute after which it was patterned. They contend that the federal cases construing the Federal Rule sustain the right of an equitable owner of stock to maintain a derivative action.

However, I take a different view of *Section 51A*. It is well recognized that the rule originally formulated in *Hawes v. Oakland, supra,*[4] and now a part of our Corporation Law, was enacted in Delaware to prevent what has been considered an evil, namely, the purchasing of shares in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock. A similar statute was adopted in New York where the courts have recognized that it was designed to correct the same evil. See *Klum v. Clinton Trust Co.*, 183 *Misc.* 340, 48 *N.Y. S.2d* 267, 268; *Coane v. American Distilling Co.*, 182 *Misc.* 926, 49 *N.Y.S.2d* 838, 843. This I conclude was the sole purpose behind the enactment of *Section 51A* in Delaware. As I view it, therefore, the statute leaves untouched the question as to whether an equitable owner of stock can maintain a derivative action. Otherwise stated, I believe *Section 51A* employed the word "stockholder" in the sense in which it is used in the common law applicable to proceedings in equity—whatever the sense is.

Apart from *Section 51A* therefore, may the equitable but unregistered owner of stock maintain a derivative action

---

[4] The rule was originally formulated by the Supreme Court to prevent fraudulent diversity cases.

under the Delaware law? I can find no dispositive decision in Delaware on this point,[5] and this is perhaps understandably so since, until 1945, one did not have to be a stockholder at the time of the transaction of which he complained in order to maintain a derivative action.

The authorities outside of Delaware are not harmonious as to the right of an equitable owner to maintain a derivative action. See 14 *C.J., Corporations,* § 1453; 18 *C.J.S., Corporations,* § 566. In 13 *Fletcher Cyc. Corporations (Perm. Ed.)* § 5976 the author states:

> "It has been held that a mere equitable right to share is not enough to give one a standing to sue; but since the suit is in equity, there is no reason why an equitable right cannot be protected, as well as a legal right, and the possession of a certificate is not indispensable * * *."

After an examination of the cases and a weighing of what I consider to be the reasons behind the diverse opinions, I have concluded that the more reasonable view—which also appears to be the majority view—is the one permitting an equitable owner to maintain a derivative action.

As this court pointed out in *Cantor v. Sachs,* 18 *Del. Ch.* 359, 162 *A.* 73, a stockholder's derivative suit possesses a double aspect. One aspect is the equivalent of a suit to compel the corporation to sue and the other is the suit by the corporation asserted by the stockholders in its behalf. The former belongs to the complaining stockholders, while the latter belongs to the corporation. The action belonging to the corporation possesses the substantial ultimate interest since it involves the merits of the controversy. The interests of the corporation and the equitable stockholders coincide as to this aspect of a derivative action with the consequence that it is not an intra corporate matter as that term is here traditionally employed.

---

[5] Such authority as there is, if at all pertinent, seems to favor the cause of the equitable owner of stock. Compare *Martin v. D. B. Martin Co.,* 10 *Del. Ch.* 211, 88 *A.* 612, 102 *A.* 373.

For many purposes, such as voting, dividend payments, and appraisal proceedings,[6] the corporation must have a rather inflexible basis of stockholder identity.[7] That rigidity is not needed where the equitable owner of stock is seeking to protect the corporate interests. It places no undue burden on a corporation to permit an equitable owner to sue in such a situation because he must prove his ownership in order to maintain the action, and the need for the same certainty which prompted the courts to recognize only registered stockholders in other situations is therefore not apparent. My views on this point coincide with those announced by Vice-Chancellor Pitney in *O'Connor v. International Silver Co.*, 68 *N.J. Eq.* 67, 59 *A.* 321, and affirmed by the New Jersey Court of Errors and Appeals, 68 *N.J. Eq.* 680, 62 *A.* 408.

Counsel for the defendants urge that the language of the Supreme Court of Delaware in the case of *Salt Dome Oil Corp. v. Schenck,* 28 *Del. Ch.* 433, 41 *A. 2d* 583, 589, 586, 158 *A.L.R.* 975 requires the conclusion here that only a registered stockholder is entitled to maintain a derivative action. The court there said:

"We are of opinion that an unregistered holder of stock is not a 'stockholder' entitled to intervene in intracorporate matters unless that status is given him expressly or by unavoidable intendment; and, consequently, only the registered holder of stock is a 'stockholder' within the sense of the word as used in Section 61 of the law, entitled to object to a proposed agreement of merger."

---

[6] See *Salt Dome Oil Corp. v. Schenck,* 28 *Del. Ch.* 433, 41 *A 2d* 583, 158 *A. L. R.* 975.

[7] Defendants place some reliance on the by-law provision which permits the Corporation to treat a record owner as the holder in fact, and which provides that it is not bound to recognize any equitable claim save as provided by Delaware law. Even assuming that a Delaware corporation might have the power to adopt a by-law which would prevent an equitable owner from maintaining a derivative action, nevertheless, I do not believe that this by-law provision even purports to have that effect. See *H. F. G. Co. v. Pioneer Publishing Co.,* (7 *Cir.*) 162 *F. 2d* 536.

However, the quoted language must be considered in the light of the fact that the court was concerned with the meaning of the word "stockholder" in a purely statutory proceeding involving a direct claim by a stockholder against a corporation for an appraisal of his stock. Moreover, and of vital importance, the quoted language must be read in the light of earlier language in the same opinion where the court said:

> "We are not concerned here with a question arising as between a transferor and transferee of stock, or as between a non-recorded transferee and a third person as to which the corporation is indifferent; *nor does the question relate to the status of an equitable owner of the stock, in a court of equity, in pursuit of an equitable remedy."* (Emphasis supplied)

Here we have an equitable owner of stock suing in a court of equity. Moreover, it is quite clear that a stockholder's suit, i. e., a derivative action, must in this state be brought in equity. Consequently, it does involve an equitable remedy. See *Sohland v. Baker*, 15 *Del. Ch.* 431, 141 *A.* 277, 58 *A.L.R.* 693; *Roberts v. Kennedy*, 13 *Del. Ch.* 133, 116 *A.* 253. Thus, we are here concerned with the question of "the status of an equitable owner of * * * stock, in a court of equity, in pursuit of an equitable remedy." So viewed, it is apparent that aside from the other reasons given, the Supreme Court of Delaware in the *Salt Dome* case did not intend to pass upon the situation now before this court. Both *State v. Superior Oil Corp.*, 1 *Terry* 460, 13 *A.* 2d 453, and *In re Giant Portland Cement Co.*, 26 *Del. Ch.* 32, 21 *A.* 2d 697, involved stockholders seeking relief under a statute. They are also distinguishable because they were relied upon as authority by the Supreme Court in the *Salt Dome* case which court, as heretofore pointed out, specifically excluded from consideration the very situation now before this court, namely, the status of an equitable owner of stock in a court of equity in pursuit of an equitable remedy.

I am unable to concur in the decision of the New York Federal District Court in *Bankers National Corporation v. Barr,* (*D.C.*) 7 *F.R.D.* 305, to the effect that only a registered stockholder may maintain a derivative action under Delaware law. The District Court in reaching its decision relied heavily upon the *Salt Dome* case and *Application of General Realty* and *Utilities Corporation,* 28 *Del. Ch.* 284, 42 *A.* 2*d* 24, both of which I believe are inapplicable to the present situation.

I conclude that under the common law of Delaware as applicable to proceedings in equity an equitable owner of stock can maintain a stockholder's derivative action, and that the term "stockholder" as employed in *Section* 51*A,* therefore, includes an equitable owner.

The motion to dismiss the amended complaint on the ground that the plaintiff was not a stockholder of record at the time of the transaction of which he complains is denied.

An order accordingly will be advised on notice.