### MURDOCK
v.
### FOLLANSBEE STEEL CORP. et al.
### Nos. 11239, 11240.

United States Court of Appeals,
Third Circuit.

Argued March 5, 1954.

Decided June 16, 1954.

Rehearing Denied July 15, 1954.

Albert I. Edelman, New York City (Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Albert I. Edelman and Werner Ilsen, New York City, on the brief), for appellant.

Sherman T. Rock, Pittsburgh, Pa. (Paul, Lawrence & Rock, Pittsburgh, Pa., on the brief), for appellees.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Is a beneficial owner of stock registered for business convenience in another's name a "holder" of such stock within the purview of a state statute requiring, in certain circumstances, posting of security for expenses in a shareholder's derivative action?

That is the primary issue, of first impression, presented by this appeal.

The undisputed facts may be summarized as follows:

The plaintiff, Rex Murdock, a resident of New Mexico, owned more than five per cent of the stock of the corporate defendant, Follansbee Steel Corporation ("Follansbee"), a Delaware corporation. Murdock's stock was not registered in his name but was represented by street certificates standing in the name of stockbrokers. He brought a shareholder's derivative action in the United States District Court for the Western District of Pennsylvania against Follansbee and eleven of its present and past directors charging them with fraud, mismanagement and waste.

Follansbee and the other defendants filed a motion to require Murdock to give security pursuant to the provisions of Section 2 of the Pennsylvania Act of April 18, 1945, P.L. 253, No. 114, 12 P. S. § 1322. The motion asserted that Murdock was not a record owner of any of Follansbee's shares.[1]

The District Court, in its opinion, W. D.Pa.1953, 114 F.Supp. 690, 693, held that " * * * the [Pennsylvania] statute requires that plaintiff *be a stockholder of record* of five per centum of the outstanding shares of defendant corporation's stock or enter adequate and proper security." (Emphasis supplied.) Pursuant to this holding the District Court ordered Murdock to register his stock within 30 days or enter security. Murdock failed to comply, and as a result a second order issued directing him to enter security in the sum of $100,000. Because of non-compliance with this second order, the District Court entered a final order dismissing Murdock's complaint "with prejudice". The instant appeal followed.

■ Before proceeding to consideration of the critical issue presented by this appeal it must be noted that as beneficial owner of stock in Follansbee, the plaintiff had the capacity to bring his derivative action in the court below even though he was not a stockholder of record. That is so since under Delaware law an equitable or beneficial owner is permitted to maintain a derivative action[2] and we are required to give effect to it.[3] We make this observation in view of the fact that the District Court in its opinion stated, 114 F.Supp. at page 693: "In this matter the Court does not pass on plaintiff's right to *sue* as an unrecorded or beneficial owner of stock." (Emphasis supplied.)

■ It is settled, too, that the Pennsylvania statute relating to security for expenses is applicable. Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U. S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528.[4]

Section 2 of the Pennsylvania Act, supra, 12 P.S. § 1322, provides as follows:

"*Security for costs and attorneys' fees.* In any such suit instituted or maintained by holder or holders of less than five per centum of the outstanding shares of any class of such corporation's stock or voting trust certificates, the corporation in whose right such action is brought shall be entitled, at any stage of the proceedings, to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorneys' fees, which may be incurred by it in

---

1. The defendant's motion also stated that Murdock owned less than five per cent of Follansbee's stock, but at the argument thereon defendants conceded that Murdock was the beneficial owner of five per cent of the stock.

2. Rosenthal v. Burry Biscuit Corp., 1948, 30 Del.Ch. 299, 60 A.2d 106, 111, 113; Steinberg v. Hardy, D.C.D.Conn.1950, 90 F.Supp. 167, 171.

3. Gallup v. Caldwell, 3 Cir., 1941, 120 F. 2d 90.

4. It was there held that a Federal Court having jurisdiction only because of diversity of citizenship must apply a statute of the forum state which makes the plaintiff, if unsuccessful, liable for reasonable expenses of the defense and provides that the corporation may require the plaintiff to give security for their payment as a condition of prosecuting the action in the event that he did not hold a stated percentage of the corporation's stock.

connection with such suit, and by the other parties defendant in connection therewith, for which it may become liable pursuant to section three of this act, to which security the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such security may, from time to time, be increased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate."

The defendants contend that in construing Section 2 we should take into consideration the provisions of Section 1, 12 P.S. § 1321, and Section 3, 12 P.S. § 1323, of the Pennsylvania Act. These sections provide:

"§ 1321. *Plaintiff must be shareholder.* In any suit brought to enforce a secondary right on the part of one or more shareholders against any officer, or director, or former officer or director of a corporation, domestic or foreign, because such corporation refuses to enforce rights which may properly be asserted by it, the plaintiff or plaintiffs must aver and it must be made to appear, that the plaintiff or each plaintiff was a stockholder at the time of the transaction of which he complains, or that his stock devolved upon him by operation of law from a person who was a stockholder at such time."

"§ 1323. *Assessment of costs.* The reasonable expenses, including attorneys' fees, of any party defendant incurred in connection with the successful defense of such suit shall be assessed upon the corporation, or if any party defendant shall be successful in part only, or if such action shall be settled with the approval of the court having jurisdiction there-

of, the reasonable costs, including attorneys' fees, of any such party defendant shall be assessed upon the corporation in such amount as the court shall determine and find to be reasonable in the circumstances. The amount of all such expenses so assessed shall be awarded as costs of the suit and be recoverable in the same manner as statutory taxable costs."

The Pennsylvania courts have not had occasion to construe the provisions of the security for expenses act, nor for that matter have the courts of the several states which have enacted similar statutes ever construed them with respect to the issue here presented. That being so we are compelled to resort to general applicable principles to reach a conclusion consistent with Pennsylvania law.[5]

■ We agree with the defendants that the three sections of the Pennsylvania Act must be considered as a whole.[6]

Section 1 prescribes the elements of a standard of eligibility which must be met before one can bring a derivative action. In its caption it first states "Plaintiff must be *shareholder*"; and then prescribes he "must aver and it must be made to appear, that the plaintiff * * * was a *stockholder* at the time of the transaction of which he complains, or that his stock devolved upon him by operation of law from a person who was a stockholder at such time." (Emphasis supplied.)

Section 2, captioned "Security for costs and attorneys' fees" provides "In any *such* suit instituted or maintained by holder or holders of less than five per centum of the outstanding shares * * *" the plaintiff may be required to give security for expenses. (Emphasis supplied.)

Section 3, captioned "Assessment of costs" provides that "The reasonable expenses, including attorneys' fees, of any

5. Continental Assurance Co. v. Conroy, 3d Cir., 1954, 209 F.2d 539.

6. The plaintiff has taken the position that Sections 1 and 2 must be construed together but has remained silent as to Section 3.

party defendant incurred in connection with the successful defense of *such suit* shall be assessed upon the corporation * * *" and " * * * such expenses so assessed shall be awarded as costs of the suit * * *" (Emphasis supplied.)

It is clear from these three sections that they together constitute one "package" designed to establish (1) eligibility of a plaintiff in a derivative action; (2) a requirement for giving of security for expenses in the event that the plaintiff who meets the qualifications of Section 1 does not "hold" five per cent of his corporation's stock; and (3) a method of assessment and recovery of expenses, including attorneys' fees, as "statutory taxable costs".

Section 1 alone relates to the problem as to whether one must be a stockholder *of record*, and not merely a beneficial or equitable owner, in order to be qualified to bring a derivative action. Sections 2 and 3 are merely ancillary to Section 1.

In construing Section 51A of the General Corporation Law of Delaware,[7] which is virtually identical with Section 1 of the Pennsylvania Act, the Court of Chancery of Delaware held the term stockholder there used, to include a beneficial or equitable owner.[8] That holding, for reasons earlier stated, is dispositive of the issue whether the plaintiff had the capacity to bring his suit. Parenthetically, it is interesting to note that the Delaware view is in accord with that of the Federal Courts[9] in construing the word "shareholder" in Rule 23(b) of the Federal Rules of Civil Procedure, 28 U. S.C., relating to derivative actions.[10]

Since the plaintiff was qualified to bring his derivative action, we are of the opinion that his ownership of five per cent of the stock of Follansbee relieved him of the necessity of filing security for expenses under the provisions of Section 2. That section, as stated, specifically relates to "*such suit instituted or maintained by holder or holders*" which are "*brought*" under Section 1 and if a beneficial owner is qualified to "bring" he is qualified to "maintain" his action if he owns five per cent of the stock without filing security. There is no possible basis for arriving at any other conclusion. Section 2 does not afford any basis for construing the word "holder" as there used in any sense other than the meaning accorded the terms "shareholder" or "stockholder" in Section 1. The same is true with respect to the impact of Section 3 on Section 1.

The view expressed is in accord with the basic concept and purposes of security for expenses legislation. The latter resulted from the frequent abuses of derivative actions as "strike suits" which were unfounded and intended to harass corporation officials or directors either by reason of "spite" or to garner the pro-

7. Section 51A of the General Corporation Law of Delaware, Rev.Code 1935, § 2083A, as added by 45 Del.Laws, c. 157, 8 Del.C. § 327, provides as follows:
"In any derivative suit hereafter instituted by a *stockholder* of a corporation organized under the laws of this State, it shall be averred in the Bill of Complaint that the Complainant was a *stockholder* of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law." (Emphasis supplied.)

8. Rosenthal v. Burry Biscuit Corporation, note 2 supra.

9. See 3 Moore's Federal Practice 2d Ed. 3517; Hurt v. Cotton States Fertilizer Co., 5 Cir., 1944, 145 F.2d 293, 295, cer-

tiorari denied 1945, 324 U.S. 844, 65 S.Ct. 679, 89 L.Ed. 1406; H. F. G. Co. v. Pioneer Pub. Co., 7 Cir., 1947, 162 F. 2d 536.

10. Rule 23(b) provides in part:
"Secondary Action by Shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association * * * the complaint shall be verified by oath and shall aver (1) that the plaintiff was a *shareholder* at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. * * *" (Emphasis supplied.)

ceeds of "nuisance value" settlements. To put an end to such suits various states enacted legislation, similar to the Pennsylvania Act, which did two things: (1) it imposed the requirement that one having less than a fixed percentage stockwise or a fixed minimum financial interest in a corporation, could not proceed with a derivative action without posting substantial security for expenses and (2) where the plaintiff failed to meet the minimum requirement of stock or financial interest, and accordingly filed security, he was made liable for the payment of the defendant's "reasonable expenses, including attorneys' fees". No such liability existed at common law for attorneys' fees and most of the "reasonable expenses" payable under this security for expenses legislation.[11]

That this type of legislation is concerned with the extent of a plaintiff's financial interest in the corporation, rather than its *form* (i. e. registered or non-registered), clearly appears from the language of the Supreme Court of the United States in Cohen v. Beneficial Industrial Loan Corp., supra, where a similar New Jersey statute was considered. Mr. Justice Jackson, speaking for the Court, said:

> " * * * We do not think the state is forbidden to use the *amount* of one's financial interest, which measures his individual injury from the misconduct to be redressed, as some measure of the good faith and responsibility of one who seeks at his own election to act as custodian of the interests of all stockholders, and as an indication that he volunteers for the large burdens of the litigation from a real sense of grievance and is not putting forward a claim to capitalize personally on its harassment value. These may not be the best ways of precluding

'strike lawsuits,' but we are unable to say that a classification for these purposes, based upon the *percentage or market value* of the stock alleged to be injured by the wrongs, is an unconstitutional one. Where any classification is based on a *percentage or an amount,* it is necessarily somewhat arbitrary. * * * If there is power, as we think there is, to draw a line based on considerations of *proportion or amount,* it is a rare case, of which this is not one, that a constitutional objection may be made to the particular point which the legislature has chosen. * * * " (Emphasis supplied.)

So also, in Shielcrawt v. Moffett, 1945, 294 N.Y. 180, 61 N.E.2d 435, 159 A.L.R. 971, the New York Court of Appeals stated that whether security would be required under the original New York statute (which has served as the basis for the security for costs enactments in the other states) turned upon the amount of the plaintiff's financial interest in the corporation on whose behalf he sued. Chief Judge Lehman, for the Court, said, 61 N.E.2d at page 439:

> "We have an official declaration that it [the New York statute] represents 'an effort to meet the problem created by the baseless so-called "strike" stockholders suits against corporation directors and officers' and that 'it does not bar any action; it does not bar any right. It simply requires that the plaintiff represent a certain *minimum of* interest in the corporation or that he put up security for the costs and expenses which will be incurred if his case is determined to be unfounded.' (Memorandum of the Governor approving the legislation.) Even though it be true that the Legislature has not barred an action brought by a plain-

---

11. "The contention that the statute denies equal protection of the laws is based upon the fact that it enables a stockholder who owns 5% of a corporation's outstanding shares * * * to proceed *without either security or liability* and *imposes* both upon those who elect to proceed with a smaller interest." (Emphasis supplied.) Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 552, 69 S.Ct. 1221, 1228, 93 L.Ed. 1528.

**576**

tiff who represents less than the specified *minimum of interest,* it has decreed, as a solution it deems reasonable of the problem created by 'baseless strike' corporation suits, that a stockholder may maintain a suit in behalf of the corporation against its directors and officers only if it represents the *'minimum of interest'* in the corporation which in the opinion of the Legislature gives reasonable assurance that the suit is not a 'baseless strike' suit, or if he gives security for costs and expenses for which he would not otherwise be liable and to which a plaintiff, having a *larger interest,* bringing the same action would not be subject. * * *" (Emphasis supplied.)

A final comment.

The District Court in expressing its view, 114 F.Supp. at page 693, that " * * * it does not seem that the intention of the statute is met unless the stock appears of record with the corporation" stated further "A registration of the stock is notice to the corporation *at all times* that plaintiff holds the minimum shares required by the statute. When such ownership falls below the minimum, then defendants are entitled to the remedy provided 'at any stage of the proceedings.' The registration of the stock is *continuing notice* to defendants, whereas unregistered shares are no notice whatsoever. * * *" (Emphasis supplied.)

The District Court failed to take into consideration the fact that ownership of stock may shift, notwithstanding the fact that no corresponding change is noted on the stock transfer books of the corporation. Under Section I of the Uniform Stock Transfer Act, (in effect in Delaware and Pennsylvania) a registered

12. 6 Uniform Laws Annotated Sec. 1; Delaware, 8 Del.C. §§ 181–202; Pennsylvania, 15 P.S. §§ 301–324.

13. Since it has been estimated that from 7 to 45 per cent of the total outstanding stock of listed companies is held in

holder may transfer his interest by mere " * * * delivery of the (stock) certificate, indorsed either in blank or to a specified person * * *" 12 Thus, it is manifest that the stock transfer books of a corporation cannot be safely relied upon to ascertain the ownership of stock.13

For the reasons stated the Order of the District Court will be reversed and the cause remanded with directions to proceed in accordance with this Opinion.

"street name", the effect of the District Court's holding is to deny a substantial group of corporate stockholders the right to institute a derivative action without posting security. See Hornstein, *The Future of Corporate Control,* 63 Harv. L.Rev. 476, 480 (1950).