434 S.E.2d 411

STATE of West Virginia ex rel. Herbert ELISH, Harvey L. Sperry, Warren E. Bartel, David M. Gould, James Bruhn, David L. Robertson, F. James Rechin, Richard F. Schubert, Gordon C. Hurlbert, Lawrence M. Isaacs, Irving Bluestone, Thomas R. Sturges, Jr., Thomas W. Evans, John T. Gilmore, and Weirton Steel Corporation, a Delaware Corporation, Petitioners,

v.

Honorable Ronald E. WILSON, Judge of the Circuit Court of Hancock County, Larry G. Godich, John L. Bird, Raymond A. Sacripanti, Sr., Sheridan Buffington, Thomas M. Rodgers, Martin A. Reitter, Jo Ann Branlett, Edward A. Godich, and Barbara J. Wilson, Respondents.

No. 21752.

Supreme Court of Appeals of West Virginia.

Submitted July 6, 1993.

Decided July 22, 1993.

John H. Tinney, K. Paul Davis, Charleston, for petitioners Elish, Bartel, Evans and Gilmore.

Robert B. King, James S. Arnold, Charleston, for petitioners Sperry, Gould, Bruhn, Robertson, Rechin, Schubert, Hurlbert, Isaacs, Bluestone and Sturges.

Carl N. Frankovitch, Arthur M. Recht, Weirton, for petitioner Weirton Steel Corp.

Edward A. Zagula, William E. Watson, David E. Khorey, Robert Yahn, Weirton, for respondents.

BROTHERTON, Justice:

This case is before the Court on a motion for a writ of prohibition by the petitioners, the Board of Directors at Weirton Steel, and Weirton Steel. These parties petition the Court to prohibit the Circuit Court of Hancock County from refusing to dismiss Larry G. Godich, John L. Bird, Raymond A. Sacripanti, Sr., Sheridan Buffington, Martin A. Reitter, Jo Ann Branlett, Edward A. Godich, and Barbara J. Wilson from the shareholder derivative suit on the grounds that the respondent "exceeded his legitimate powers under W.Va.Code § 53–1–1."

The shareholder derivative suit was filed on August 6, 1992, by the respondents, plaintiffs below, active members of the Weirton Steel Employee Stock Ownership Plan (ESOP). They seek to recover damages as beneficial shareholders of Weirton Steel from the individuals listed as petitioners above because of an alleged breach of fiduciary duty. The petitioners, defendants below, are current and former officers and members of the Board of Directors of Weirton Steel. The respondents contend that the petitioners were grossly negligent in taking certain actions during the course of contracting for the construction of two reheat furnaces.

The ESOP participants of Weirton Steel contend that they brought suit because the defendants issued a purchase order to construct two new reheat furnaces at the cost of $49,065,740.00, and that they knew or should have known that Brickmont & Associates, the company hired to provide the furnaces, had a negative net worth of $1,466,105.00. They also contend that the Board should have known that Brickmont & Associates could not provide a performance bond, yet they paid the company $28,132,190.00 prior to the execution of the contract without a performance bond. Finally, they complain that at the completion of the first reheat furnace, Brickmont had been paid approximately $50,000,000.00. As a result, they contend that Weirton Steel had to pay in excess of $30,000,000.00 to complete the project.

This case was initially before Judge Craig Broadwater. However, after the circuit judges rotated, Judge Wilson became the presiding judge. On February 8, 1993, the defendants below, the members of the Board of Directors, filed a joint motion to dismiss eight of the nine plaintiffs below on the basis that they lacked standing to bring the derivative action because they were not "holders of record" of Weirton Steel shares as required under W.Va.Code § 31–1–103 (1988).[1]

On April 20, 1993, Judge Wilson denied the defendants' joint motion to dismiss. In its order and opinion dated April 20, 1993, the Hancock County Circuit Court examined the history of the Model Business Corporation Act of 1969, which was used as the basis for W.Va.Code § 31–1–1 et seq., adopted in 1974. The court found that W.Va.Code § 31–1–103, which required, in part, that a plaintiff must be a "holder of

---

1. Of the nine plaintiffs who filed this suit below, only one holds stock in his own name, in an amount insufficient to file a lawsuit without the posting of a bond estimated at $1,000,000.00. The remaining eight plaintiffs are members of the Weirton ESOP. The stock owned by the ESOP plaintiffs is held in the name of the ESOP by its trustee. Together, the nine plaintiffs own stock of approximately $68,123.00, plus 316 shares of preferred stock.

record," also required contemporaneous ownership, which "did not exclude the concept of equitable ownership." [2] The court noted that the majority of jurisdictions, including Delaware, find equitable ownership is enough to bring a derivative suit. *Rosenthal v. Burry Biscuit Corp.*, 60 A.2d 106 (Del.Ch.1948). More recently, the Delaware legislature, in Title 8, § 327, allowed equitable or beneficial owners to sue under their statute.

Similarly, Judge Wilson concluded that under the common law of West Virginia, an equitable owner of stock could maintain a derivative suit. He found that the "holder of record" requirement in W.Va.Code § 31-1-103 mandated contemporaneous ownership, which did not preclude an action by equitable owners of stock. He noted that the interests of ESOP members and registered shareholders are identical. Thus, Judge Wilson found there was no basis for a distinction. He also stated that the legislature never intended to bar ESOP employees from bringing a derivative law suit because until 1989, there were no Weirton Steel shareholders of record. Under the petitioners' interpretation of W.Va.Code § 31-1-103, no one was entitled to bring a shareholder derivative suit prior to 1989, when the company went public. Consequently, the court refused to dismiss the plaintiffs. The defendants below, now petitioners, filed this appeal from the April 20, 1993, order of the Hancock County Circuit Court.

The petitioners contend that in doing so, Judge Wilson, in effect, "rewrote the statute to permit what he considered to be equitable holders to maintain shareholder derivative actions in West Virginia." The petitioners seek a writ of prohibition from the Court in order to preclude Judge Wilson, the respondent, from refusing to dismiss the eight plaintiffs who were not holders of record of Weirton Steel stock.

All nine plaintiffs are employees of Weirton Steel and participate in Weirton Steel's employee stock ownership plan (ESOP).

Under the terms of the ESOP, an account is maintained for each participating Weirton Steel employee and shares of Weirton Steel stock, which are owned of record by the ESOP trust, are allocated to each participant's account. The ESOP provides the participants with pass through voting rights through the trustee and receive dividends through the transfer agent into their accounts. The allegation that they do not have standing is based on the fact that the respondents are not actually owners of record of the stock, with the exception of the one plaintiff with preferred shares, because the stock shares are owned of record by the ESOP trust.

Thus, the issue to be addressed by this Court is whether the plaintiffs below have standing in West Virginia to initiate a shareholder derivative suit when they are participants in an employee stock ownership plan, but do not hold actual title of the stock certificates.

■ West Virginia Code § 53-1-1 (1981) provides that a "writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, it exceeds its legitimate powers." In this case, there is no question that Judge Wilson has the jurisdiction over the subject matter in controversy. The second question then, is whether, having such jurisdiction, he has exceeded his legitimate power by refusing to dismiss the plaintiffs. In cases involving writs of prohibition, we have held that:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among the litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a

---

**2.** In the 1984 Model Business Corporation Act, which has not been adopted by West Virginia, there is no holder of record requirement.

clear statutory, constitutional or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance. Syl. pt. 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979).

The petitioners, of course, argue that if a writ of prohibition is not issued to prevent Judge Wilson from refusing to dismiss eight of the nine plaintiffs who were not holders of record of the stock, the case would come up on appeal and be reversed. They also contend that there is a clear positive command of statute which requires that those petitioners be dismissed.

West Virginia Code § 31–1–103 (1988) sets forth the requirements for a shareholder to file suit in this State:

No action shall be brought in this State by a shareholder in the right of a domestic or foreign corporation *unless the plaintiff was a holder of record of shares* or *of voting trust certificates* therefor at the time of the transaction of which he complains, or his shares or voting trust certificates thereafter devolved upon him by operation of law from a person who was a holder of record at such time. (Emphasis added.)

██ First, let us address what the ESOP participants are not. The ESOP participants do not hold voting trust certificates as contemplated by W.Va.Code §§ 31–1–94 and 31–1–103. West Virginia Code § 31–1–94 requires certain elements before a group of shareholders are considered to be part of a voting trust:

Any number of shareholders of a corporation may create a voting trust for the purpose of conferring upon a trustee or trustees the right to vote or otherwise represent their shares, for a period of not to exceed ten years, by entering into a written voting trust agreement specifying the terms and conditions of the vot-

ing trust, by depositing a counterpart of the agreement with the corporation at its principal office, and by transferring their shares to such trustee or trustees for the purposes of the agreement. Such trustee or trustees shall keep a record of the holders of voting trust certificates evidencing a beneficial interest in the voting trust, giving the names and addresses of all such holders and the number and class of the shares in respect of which the voting trust certificates held by each are issued, and shall deposit a copy of such record with the corporation at its principal office.

In this case, the ESOP participants were not shareholders who placed their shares in a joint trust by signing a voting trust agreement. The ESOP participants became shareholders only when the ESOP was created, not before. No signed voting trust agreement exists. There is no time limitation on the ESOP; in fact, the respondents note that the ESOP was not intended to last only ten years, but instead until the last participant reached retirement age. Consequently, for the purposes of W.Va. Code § 31–1–103, the ESOP participants are not holders of voting trust certificates under either West Virginia or Delaware law.[3]

The next question is whether the ESOP participants have standing to sue. The petitioners argue that a party's standing to maintain a stockholder derivative action depends upon whether the party is a shareholder of record. West Virginia Code § 31–1–103 requires that parties be "holders of record" in order to have standing to participate in a shareholder derivative suit. *Black's Law Dictionary* defines "record owner" as the person in whose name stock shares are registered on the records of a corporation. *Black's Law Dictionary* 1274 (6th ed. 1990). Because Weirton Steel is a Delaware corporation doing business in

---

**3.** Delaware law similarly defines a voting trust as "'a device whereby two or more persons owning stock with voting powers, divorce the voting rights thereof from the ownership, retaining to all intents and purposes the latter in themselves and transferring the former to trust-

ees in whom the voting rights of all the depositors in the trust are pooled.'" (Citations omitted.) *Oceanic Exploration Co. v. Grynberg,* 428 A.2d 1, 6 (Del.Supr.1981). *See also* 8 Del.C. § 218(a) (1991).

West Virginia, our analysis of standing must revolve around what state's law is to be applied.

■ The general rule regarding choice of law requires that the substantive law of the place of incorporation is to be applied unless another state has a more substantial connection or the application of the other state's law would be contrary to our public policy. Section 302 of Restatement (2d) of Conflicts, Chapter 13, provides:

(1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301, are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[4]

(2) *The local law of the state of incorporation will be applied to determine such issues,* except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied. (Emphasis added.)

In the comments to § 302, the Restatement explains the rationale behind the application of the local law of the state of incorporation in most cases:

Application of the local law of the state of incorporation will usually be supported by those choice-of-law factors favoring the needs of the interstate and international systems, certainty, predictability and uniformity of result, protection of the justified expectations of the parties and ease in the application of the law to be applied.

■ Section 303 of the Restatement, entitled "Shareholders," specifically applies the law of the state of incorporation when determining who are shareholders of a corporation, with certain exceptions:

The local law of the state of incorporation will be applied to determine who are shareholders of a corporation except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the person involved and the corporation, in which event the local law of the other state will be applied.

The ESOP shareholders are considered shareholders for the purposes of the Restatement. A shareholder is defined in the comments as:

a. *Meaning of "shareholder."* As used in the Restatement of this Subject, a shareholder is one who is recorded as such on the books of the corporation. *One who is not so recorded but who has title to a share will be entitled to be recorded as a shareholder on the books of the corporation.* He will also be entitled to the share as against third persons. (Emphasis added.)

The comments to Section 303 discuss the importance of uniform treatment of shareholders in determining their rights and liabilities:

As stated in Comment e of § 302, *uniform treatment of the shareholders of a corporation is an important objective which can only be attained by having their rights and liabilities with respect to the corporation governed by a single law.* This will be the local law of the state of incorporation except when, as stated in Comment e, the courts of this state would apply the local law of anoth-

---

**4.** Section 6 of the Restatement (2d) of Conflicts explains:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

er state in the determination of the particular issue or in the extremely rare situation where some other state has a more significant relationship to the parties and the corporation with respect to the particular issue....

The state of incorporation will usually be the state of most significant relationship, because (1) this state will usually have the dominant interest in the question of what persons are shareholders of the corporation, (2) the parties, to the extent that they think about the matter, would usually expect to have this issue determined by the local law of this state or, at least, by the law that would be applied by the courts of this state and (3) this state is easy to identify with the result that application of its law will satisfy the choice-of-law policy of ease of application. (Emphasis added.)

■ We concur with the rationale set forth in the Restatement (2d) of Conflicts.[5] Although the petitioners classify the case before us as a question of standing, and therefore purely procedural, we believe it is more. While we agree that there are procedural aspects in W.Va.Code § 31–1–103, it takes a secondary role to the substantive question of the rights of the ESOP shareholders.[6] The underlying issue revolves around who are the shareholders, what are their rights and liabilities, and what relationship do they hold to the corporation and the other non-ESOP shareholders. Further, there is no identifiable public policy reason for West Virginia law to be applied over that of Delaware, or the existence of an "extremely rare situation where some other state has a more significant relationship to the parties and the corporation...." Restatement (2d) of Conflicts, at comments to § 303.[7] While Weirton Steel is a prominent employer in West Virginia, the battle over who can participate in a shareholder derivative suit is a struggle peculiar to the corporation itself and must be handled as such.

Finally, our decision to apply the law of the state of incorporation reflects the importance of applying choice of law principles—"certainty, predictability and uniformity of result, protection of the justified expectations of the parties and ease in the application of the law to be applied." Restatement (2d) of Conflicts, at comments to § 302. The only way West Virginia can expect fair and equal treatment from our fellow states is if we play by the rules.[8] As no sufficient reason was presented to this Court to convince us that West Virginia has a more significant relationship to this transaction and that West Virginia law should be applied, we will comply with the choice of law principles and apply the law of the state of incorporation—Delaware.

■ In *Rosenthal v. Burry Biscuit Corp.*, 60 A.2d 106 (Del.Ch.1948), the Delaware Chancery Court ruled that in Dela-

---

**5.** The structure of the ESOP plan supports our conclusion. The ESOP gave the members proportional voting rights, meaning that every member's vote was voted by the trustee. The members also receive a dividend. Moreover, from 1984 through 1989 all the stock was owned through the ESOP plan. If the ESOP participants were not permitted to participate in a shareholders derivative suit, then no one could sue other than, we assume, the trustee. It is difficult to believe the Legislature intended that the shareholders be left without recourse.

**6.** In *Gallup v. Caldwell*, 120 F.2d 90 (3rd Cir. 1941), the court stated that the question of who is a shareholder of record "is a question of the law of New Jersey, the state under the law of which this company was incorporated." *Id.* at 93. *See also Steinberg v. Hardy*, 90 F.Supp. 167 (D.Conn.1950).

**7.** We have previously held that a corporation is a creature of the state in which it was incorporated: "A corporation is a creature of the state by which it is chartered; the courts of one state do not have the power to dissolve a corporation created by the laws of another state." Syl. pt. 2, *Young v. JCR Petroleum*, 188 W.Va. 280, 423 S.E.2d 889 (1992).

**8.** *See also Liberty Mutual Ins. v. Triangle Industries*, 182 W.Va. 580, 390 S.E.2d 562 (1990), in which we examined an insurance policy to determine the choice of law. Because the place of contract, place of insured risk, and place of injury were different, we analyzed § 6 of the Restatement (2d) of Conflicts and determined that although both West Virginia and Ohio had significant relationships to the contract, the policy was bargained for, created and agreed to in New Jersey. "[C]ertainty, predictability and uniformity of result" were found to be the essential elements in reaching that conclusion.

ware, equitable owners could be party to derivative suits. The *Rosenthal* court reasoned that "under the common law of Delaware as applicable to proceedings in equity an equitable owner of stock can maintain a stockholder's derivative action. . . ." *Id.* at 113. The court also found that the rigidity of stockholder lists was not necessary where the equitable owner sought to protect corporate interests. *Id.* at 112. Delaware Code Annotated, Title 8, § 327 (1991), does not limit to "holders of record" those who can file a shareholder derivative suit:

> In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law.

Of course, the Delaware Code does limit those who can maintain a derivative suit to parties who were shareholders at the time of the transaction. *Schreiber v. Bryan,* 396 A.2d 512 (Del.Ch.1978). Consequently, in Delaware, ESOP participants could institute a derivative suit if they owned stock at the time the contract for the reheat ovens was executed.

In summary, we rule that the local law of the state of incorporation should be applied to determine who can bring a shareholder derivative suit. In the case now before us, the ESOP participants are shareholders within the definition of the term found in the comments to § 303 of the Restatement (2d) of Conflicts. Under the local law of Delaware, beneficial or equitable shareholders can participate in a shareholder derivative suit. Accordingly, we refuse to issue the requested writ of prohibition and rule that the Circuit Court of Hancock County was within its legitimate power in refusing to dismiss the ESOP participants from this shareholder derivative suit.

Writ denied.

MILLER, Justice, concurring:

Although I agree with the majority that this writ should be denied, I disagree with the majority's interpretation of W.Va. Code 31-1-94 (1974), and W.Va. Code, 31-1-103, in regard to voting trust certificates. The majority recognizes that, under West Virginia law, a shareholder derivative suit may be filed by holders of voting trust certificates. W.Va. Code, 31-1-103. However, the majority concludes that holders of shares under the employee stock option plan (ESOP) in this case are not holders of voting trust certificates. I believe that under West Virginia law, the respondents, equitable shareholders of Weirton Steel stock under this ESOP, have standing to bring the underlying action because, in essence, they are holders of record of voting trust certificates.

The majority cites W.Va. Code, 31-1-94, to support its contention that this ESOP is not a voting trust. 189 W.Va. at 746, 434 S.E.2d at 415. W.Va. Code, 31-1-94, sets out the following method of creating a voting trust: (1) Any number of shareholders of the corporation may create a voting trust by conferring upon a trustee or trustees the right to vote or otherwise represent their shares; (2) the voting trust may not exceed a period of ten years; (3) the voting trust must be a written agreement specifying the terms and conditions of the voting trust; (4) the voting trust agreement must be deposited with the corporation at its principal office; and (5) the shares must be transferred to the trustee.

Although it is true that the ESOP does not meet the ten-year limitation on voting trusts prescribed by W.Va. Code, 31-1-94,[1] it is also true that the ESOP satisfies the purpose of the ten-year limitation in substance if not form. The ten-year rule is designed to protect shareholders from signing away their voting rights for a prolonged period of time. Thus, voting trust

---

**1.** The majority also suggests that a voting trust must be "signed." This assertion is unsupported by the statute, which merely states that the voting trust must be written. The ESOP meets that qualification. Moreover, the majority claims that the ESOP is not a voting trust because the ESOP was created before the respondents became shareholders. Such an argument is hypertechnical and wrong. The fact is that the respondents meet the statutory requirement that they be shareholders who confer upon trustees certain representation interests.

participants only are locked in for a limited time if they become disenchanted with the trustee's representation. The ESOP provides that shareholders may make periodic withdrawals of their interests under the trust as early as one year after joining the ESOP. Thus, the purpose of the ten-year rule is satisfied. See *Oceanic Exploration Co. v. Grynberg*, 428 A.2d 1, 5 (Del.Sup. 1981), where the Delaware court held that, in regard to the applicability of the Delaware voting trust statute "the test is whether the *substance and purpose* of the stock arrangement is 'sufficiently close to the substance and purpose of (the [voting trust] statute) to warrant its being subject to the restrictions and conditions imposed [thereby].'" *Quoting Lehrman v. Cohen*, 222 A.2d 800, 806 (Del.Sup.1966). *See generally* Annot., *Validity of Voting Trust or Similar Agreement for Control of Voting Power of Corporate Stocks*, 98 A.L.R.2d 376 (1964).

Moreover, the majority's reliance on W.Va. Code, 31–1–94, in interpreting W.Va. Code, 31–1–103, is misplaced. W.Va. Code, 31–1–94, is designed not to restrict shareholder rights, but rather to enhance them. Regulation of voting trusts serves the important purpose of preventing secret and uncontrolled groups of shareholders from acquiring control of a corporation to the detriment of non-shareholders. *Oceanic Exploration Co.*, 428 A.2d at 7 (*citing Lehrman*, 222 A.2d at 807). *See generally* 76 Am.Jur.2d *Trusts* § 11 at 43 (1992); 18A Am.Jur.2d *Corporations* § 1125, *et seq.* (1985). Certainly, the ESOP is neither secret nor uncontrolled. It was created for the purpose of divorcing the self-interest of the employees from management decisions and to facilitate corporate growth to the benefit of all shareholders. Thus, it meets the traditional purpose of a voting trust.

In the context of W.Va. Code, 31–1–103, one must then look to the purpose of the statute—and the purpose is clearly to permit interested shareholders to protect the corporate interests. It limits the right to file a derivative action to shareholders with more than mere partial equitable interests. However, it permits traditional voting trust participants the right to file a derivative action because their share interests are deemed strong enough to sustain such an action. Thus, it is the amount of control over one's share to which the standing limitation in W.Va. Code, 31–1–103, is directed.

In this case, the respondents, as members of the ESOP, do not have all the rights of traditional shareholders. Their rights to sell their shares are limited. However, their interests are much stronger than those who are traditional participants in voting trusts. The respondents have the right to direct the trustee to vote their shares according to the respondents' wishes, thus giving them *more control* than traditional voting trust participants. I believe that the shareholder derivative suit statute must be construed in light of its purpose, which is to allow shareholders to file a derivative action if their control of their shares is strong enough. Thus, any shareholder with interests and control *greater* than participants in a traditional voting trust would have standing to file a shareholder derivative action under W.Va. Code, 31–1–103.

Although case law in this area is rather limited, one jurisdiction has dealt with the analogous situation of participants in a stock bonus plan and found that such participants qualify as holders of record of voting trust certificates. In *Foltz v. United States News & World Report, Inc.*, 627 F.Supp. 1143, 1159 (D.D.C.1986), the court stated the following:

"What a participant in the stock bonus plan had were voting trust certificates which were redeemable as stock at the termination of the participant's employment, should the magazine decline its option to repurchase the stock represented by the certificates. In that eventuality, the participant would hold a stock certificate, with which he could do as he wished. Looking then at the plain language of the statute, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975), *citing in [International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v.]*

*Daniel,* 439 U.S. [551] at 558, 99 S.Ct. [790] at 795 [58 L.Ed.2d 808], it would appear that interests in the U.S. News stock bonus plan represent either 'stock' or 'voting-trust certificates' within the meaning of the securities laws." (Footnote omitted).

In any event, I believe, for purposes of standing under the West Virginia shareholder derivative suit statute, W.Va. Code, 31–1–103, that the substance and purpose of the ESOP meets the qualifications of a voting trust, and that the respondents should be permitted to proceed on that basis.