S05G2011. ADVANCE PCS et al. v. BAUER et al.
(632 SE2d 95)

SEARS, Chief Justice.

We granted certiorari in this case to determine whether the Court of Appeals correctly held that the Employee Retirement Income Security Act of 1974[1] ("ERISA") did not preempt plaintiffs' claims.[2] Because plaintiffs' claims are dependent on the terms of their respective ERISA plans ("plans"), and could have been raised in the context of ERISA's civil enforcement provisions, we find that plaintiffs' claims are preempted by ERISA. Accordingly, we reverse.

---

[1] 29 USC § 1001 et seq.

[2] *AdvancePCS v. Bauer*, 274 Ga. App. 381 (617 SE2d 637) (2005).

The plaintiffs are breast cancer survivors who were prescribed the drug tamoxifen over a period of years to reduce the chances of the cancer recurring. The defendant is Advance PCS, Inc. ("PCS"), a pharmaceutical benefits manager that contracted with plaintiffs' ERISA plan providers to process the prescription drug benefits under the plans. ERISA is a nationally uniform regulatory framework that governs operation and administration of employer-provided health insurance plans, and is "designed to promote the interests of employees and their beneficiaries in employee benefit plans."[3]

Plaintiffs' ERISA plans include prescription drug benefits, which entitle plaintiffs to obtain prescribed drugs by paying a particular co-payment, and require the plan provider to cover the remaining cost of the drugs. Plaintiffs are required to pay a higher co-payment for brand name drugs than for generic drugs. Plaintiffs claim under Georgia law that PCS was unjustly enriched by improperly classifying tamoxifen as a "brand-name" drug, when it should have been classified as a "generic" drug. Although the terms "generic" and "brand-name" are defined in plaintiffs' respective plans, PCS used independent classification sources to classify tamoxifen as a brand-name drug. Plaintiffs seek to represent themselves and persons similarly situated in a class under OCGA § 9-11-23.

Although plaintiffs' plans contain ERISA-mandated internal review procedures by which plaintiffs can appeal adverse benefit determinations, plaintiffs chose not to utilize those internal appeal procedures. Instead, plaintiffs filed a complaint seeking to represent the class of persons for whom PCS classified tamoxifen as a brand name drug "when the medical plans covering [those persons] do not permit [PCS] to classify tamoxifen as a brand name drug."

### 1. Express Preemption.

ERISA § 514 (a)[4] states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [covered by ERISA]." "Section 514 (a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law . . . [and] to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government."[5] The parties acknowledge that the plans are covered by ERISA, so the plaintiffs' state law claims are expressly preempted in this case if those claims "relate to" plaintiffs' ERISA plans.[6]

---

[3] *Shaw v. Delta Air Lines*, 463 U. S. 85, 90 (103 SC 2890, 77 LE2d 490) (1983).

[4] 29 USC § 1144 (a).

[5] *Ingersoll-Rand Co. v. McClendon*, 498 U. S. 133, 142 (111 SC 478, 112 LE2d 474) (1990).

[6] *Howard v. Parisian, Inc.*, 807 F2d 1560, 1563 (11th Cir. 1987); see also *Norton v. North*

"Congress used the words 'relate to' in § 514 (a) in their broad sense."[7] A cause of action "relates to" a plan where "it has a connection with or reference to such a plan."[8] The "deliberately expansive"[9] language used in § 514 (a) "indicates Congress's intent to establish the regulation of employee welfare benefit plans 'as exclusively a federal concern.' "[10]

Where a state law tort action is "based on alleged improper processing of a claim for benefits under an employee benefit plan,"[11] that claim absolutely "relates to" the plan.[12] A claim will also be preempted where the terms or existence of the plan is "a critical factor in establishing liability."[13]

Because the plaintiffs' claims depend entirely on the language of their plans, and whether that language entitles them to pay a generic co-payment for the drug tamoxifen, those claims are expressly preempted by ERISA. As stated in *Aetna Health, Inc. v. Davila*, plaintiffs' claims are preempted by ERISA because any liability under those claims "derives entirely from the particular rights and obligations established by the benefits plans."[14] Plaintiffs' co-payment responsibility and entitlement exists only because the plans required plaintiffs to pay a specified amount for a generic drug and another amount for a brand name drug. Only if the plan entitles them to the generic co-payment for tamoxifen would their unjust enrichment claims against PCS have any merit.

Plaintiffs attempt to distinguish the cases finding ERISA preemption by arguing that their claims are not based on any improper denial of benefits, as there is no question that their ERISA plans entitle them to obtain tamoxifen generally. That contention, however, takes an unduly narrow view of the definition of "benefit" under an ERISA plan. It is true that plaintiffs' claims are not the typical "denial of coverage" claims that are ubiquitous in health insurance disputes.

---

*Ga. Foods*, 211 Ga. App. 684, 686 (440 SE2d 263) (1994) ("state law need not be directly addressed to the pension plan to be preempted.").

[7] *Shaw*, 463 U. S. at 98.

[8] Id. at 97.

[9] *Ingersoll-Rand*, 498 U. S. at 138.

[10] *New York State Conf. of Blue Cross &c. Plans v. Travelers Ins. Co.*, 514 U. S. 645, 656 (115 SC 1671, 131 LE2d 695) (1995) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U. S. 504, 523 (101 SC 1895, 68 LE2d 402) (1981)).

[11] *Pilot Life Ins. Co. v. Dedeaux*, 481 U. S. 41, 48 (107 SC 1549, 95 LE2d 39) (1987).

[12] Id.; *Ingersoll-Rand*, 498 U. S. at 140.

[13] *Ingersoll-Rand*, 498 U. S. at 139-140.

[14] 542 U. S. 200, 213 (124 SC 2488, 159 LE2d 312) (2004).

But plaintiffs' right to obtain a drug by paying a particular co-payment, which requires their plan provider to cover the remaining cost of the drug, is undeniably a plan benefit.[15]

Plaintiffs also argue that their claims do not "relate to" their ERISA plans because PCS's classification of tamoxifen as a brand-name drug is not based on the definitions in the plans, but is based instead on independent classification sources. PCS's reasons for classifying tamoxifen as brand-name, however, are irrelevant to plaintiffs' entitlements and any unjust enrichment by PCS based on its miscalculation of those entitlements. If plaintiffs are entitled to pay a generic co-payment for tamoxifen, based on the language and definitions of their respective plans, then plaintiffs' plan providers are obligated to provide the drug at that price regardless of any designation by PCS. If PCS's classification is deemed erroneous, and the plan providers are ordered to provide the drug as a generic drug, then any liability for the misclassification is a contractual matter between PCS and the plan providers. Whether or not PCS improperly calculated the amount plaintiffs owed for their drugs, the ultimate responsibility for such a decision, with respect to the plaintiffs, lies with the plan administrators.

Next, plaintiffs contend that their claims are not preempted because PCS is not an ERISA fiduciary. But the identity of the defendant is not the relevant inquiry into a preemption analysis. Rather, the question is whether plaintiffs' claims relate to an ERISA plan.[16] ERISA § 514 (a) "preempts *all* state laws insofar as they relate to employee benefit plans and is not limited to state laws as applied to plan fiduciaries."[17] "[A]ll courts of appeals to have considered the issue have held that ERISA preemption may apply regardless of whether the defendant is a plan fiduciary."[18]

In *Morstein v. National Ins. Svcs.*, the Eleventh Circuit held that ERISA did not preempt a state law claim brought against a non-ERISA entity, but only because that claim did "not affect relations among principal ERISA entities as such."[19] Here, the state law claim against the non-fiduciary does affect the relationship between ERISA

---

[15] See *Heffner v. Blue Cross &c. of Ala.*, 443 F3d 1330, 1338 (11th Cir. 2006) ("[T]he existence and amount of a plan's deductible directly affects the value of benefits offered under the plan. All other things being equal, imposing a deductible decreases the plan's benefits, and the value of those benefits varies inversely with the amount of the deductible. Viewed in these real economic terms, not having to pay a deductible is a benefit of a plan.").

[16] *Howard*, 807 F2d at 1565.

[17] (Emphasis in original.) Id. See also *Light v. Blue Cross &c. of Ala.*, 790 F2d 1247, 1248-1249 (5th Cir. 1986) (ERISA preempts the assertion of claims of improper benefit denials against non-fiduciary plan administrators).

[18] *Corcoran v. United Healthcare*, 965 F2d 1321, 1330, n. 13 (5th Cir. 1992).

[19] 93 F3d 715, 722 (11th Cir. 1996).

entities, namely the relative cost the ERISA beneficiaries and providers must bear for plaintiffs' tamoxifen.[20] Moreover, the claims in *Morstein* did not depend on the terms of any ERISA plans because there was no ERISA plan to enforce due to the alleged fraud of the defendant.[21] In this case, to the contrary, whether plaintiffs are entitled to the damages they seek depends entirely on the language of their ERISA plans.

Accordingly, plaintiffs' claims are expressly preempted by ERISA § 514 (a) because the claims are entirely dependent on the language and terms of the plaintiffs' ERISA plans, and thus, the claims clearly "relate to" the plans.

## 2. Implied Preemption.

In addition, plaintiffs' claims are impliedly preempted by ERISA § 502 (a)[22] because the claims could have been brought under that subsection and do not arise from any legal duty independent from plaintiffs' plans, and thus are duplicative of an action for which ERISA provides the exclusive remedy.[23]

ERISA § 502 (a) provides plaintiffs with a cause of action "to recover benefits due [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] right to future benefits under the terms of the plan." "If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits."[24] Here, plaintiffs could have brought an action against their plan providers under § 502 (a) alleging overpayment of co-payments since the providers are obligated to provide them a prescription drug benefit minus the applicable co-payment.[25]

---

[20] See *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F3d 186, 188 (11th Cir. 1997) ("where the state law claim brought against a non-ERISA entity affects the relationship between the ERISA entities, the state law claim is preempted.").

[21] *Morstein*, 93 F3d at 717.

[22] 29 USC § 1132 (a).

[23] *Aetna Health*, 542 U. S. at 210. Generally, a claim that is preempted by implication under § 502 (a) will also be expressly preempted by § 514 (a). *New York State Conf. of Blue Cross &c. Plans*, 514 U. S. at 658 ("state laws providing alternative enforcement mechanisms also relate to ERISA plans").

[24] *Aetna Health*, 542 U. S. at 210.

[25] *Heffner*, 443 F3d at 1338 ("[a]n action to recover overstated deductibles, to enforce a 'no deductible' provision of a plan, or to enjoin the imposition of deductibles that are not authorized by the plan is just as properly brought under ERISA § 502 (a) (1) (B) as is an action to recover a benefit, to enforce a benefit provision, or to enjoin the nonpayment of benefits.").

Congress intended § 502 (a) to be "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."[26] "[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim.' "[27] Thus, "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."[28]

In *Aetna Health*,[29] the U. S. Supreme Court ruled that a claim alleging that a plan provider failed to exercise ordinary care in the administration of plan benefits fell squarely within the scope of ERISA's cause of action under § 502 (a). The Court elucidated a two-part test to determine whether a cause of action is preempted under § 502 (a), stating that "[(1)] [I]f an individual, at some point in time, could have brought his claim under ERISA § 502 (a) (1) (B), and [(2)] where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted."[30] Though the plaintiffs' actions in that case were brought in tort, the Court held that the duty of the provider to exercise ordinary care under Texas law did not arise independently from ERISA or the terms of the plans.[31]

The two-part test from *Aetna Health* is satisfied in this case. Here, plaintiffs clearly could have appealed the drug assessment by PCS as a benefit denial under the plans and their definitions of brand

---

[26] *Pilot Life Ins. Co.*, 481 U. S. at 52, 56 (Congressional "expectations that a federal common law of rights . . . would develop . . . would make little sense if the remedies available to ERISA participants and beneficiaries under § 502 (a) could be supplemented or supplanted by varying state laws."); see also *Ingersoll-Rand*, 498 U. S. at 144 (§ 502 (a) provides the "exclusive remedy for rights guaranteed under ERISA").

[27] *Aetna Health*, 542 U. S. at 209 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U. S. 58, 65-66 (107 SC 1542, 95 LE2d 55) (1987)); see also *Pilot Life Ins. Co.*, 481 U. S. at 54 ("[T]he detailed provisions of § 502 (a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.").

[28] *Aetna Health*, 542 U. S. at 209; see also *Rush Prudential HMO, Inc. v. Moran*, 536 U. S. 355, 379 (122 SC 2151, 153 LE2d 375) (2002) (a state law claim that "provide[s] a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA . . . patently violates ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities.").

[29] 542 U. S. at 200.

[30] Id. at 210.

[31] Id. at 213.

and generic drugs.[32] Under Department of Labor regulations, plan participants and beneficiaries must be permitted to appeal co-payment assessments as a partial benefit denial under the claims procedures mandated by ERISA § 502 (a).[33] Accordingly, the first *Aetna Health* prong is satisfied.

Under the second prong, PCS's duty does not arise independently of the terms of the ERISA plans. The plans define generic and brand name. Although PCS admits to using independent sources to classify tamoxifen, the plaintiffs' rights are not dependent on the accuracy of PCS's sources, but on the language of their own plans. If PCS's classification sources are inconsistent with the plaintiffs' plans, the plan language would prevail and the inconsistency could have been remedied through the appeal procedures set forth in § 502 (a). Plaintiffs have no unjust enrichment claim unless their plans entitle them to a generic co-payment. The plaintiffs' claim that PCS violated independent duties owed under state tort law makes no difference. As in *Aetna Health,* the duties imposed by Georgia tort law "do not arise independently of ERISA or the plan terms."[34] If plaintiffs are not entitled to pay a generic co-payment for tamoxifen under their respective plans, then PCS has not been unjustly enriched by charging them a brand-name co-payment.[35]

Accordingly, plaintiffs' claims are both expressly and impliedly preempted by ERISA.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 26, 2006.

*Holland & Knight, Susan W. Housen, Laurie W. Daniel, Jennifer B. Savage, Steptoe & Johnson, Paul J. Ondrasik, Jr., Martin D. Schneiderman, Eric G. Serron,* for appellants.

*Fine & Block, Kenneth I. Sokolov, Lee & Amtzis, Eric Lee, Gold & Coulson, Arthur D. Gold, Phillips & Garcia, Carlin J. Phillips, Andrew J. Garcia,* for appellees.

---

[32] See, e.g., *Del Greco v. CVS Corp.*, 337 FSupp.2d 475, 485 (S.D. N.Y. 2004) (claim that defendant improperly classified tamoxifen as "brand-name drug" was a claim for benefits under ERISA § 502 (a)).

[33] See U. S. Department of Labor, Frequently Asked Questions About the Benefit Claims Procedure Regulation, Question C-12, available at *http://www.dol.gov/ebsa/faqs/faqs_claims_proc_reg.html* (last visited May 25, 2006).

[34] 542 U. S. at 212.

[35] See also *Cooperstein v. Independence Blue Cross*, 2005 U. S. Dist. LEXIS 15757, *26 (E.D. Pa. 2005) (plaintiffs' claims preempted by § 502 (a) because by claiming that defendants charged higher co-payment by incorrectly coding generic drugs as brand name drugs "[p]laintiffs essentially ask the Court to recover benefits withheld by [d]efendants and to enforce parts of their ERISA plan.").

*Stephanie W. Kanwit, Julie S. Miller, O'Melveny & Myers, Robert N. Eccles, Jonathan D. Hacker,* amici curiae.