NOTICE

Decision filed 08/09/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0270

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| LOUIE HOUSMAN and ALBERT JOHNSON, JR., | ) Appeal from the ) Circuit Court of ) Alexander County. |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) No. 02-CH-021 |
| | ) |
| DANA ALBRIGHT, DEBORAH GUETTERMAN, DAVID JACKSON, and GEOFFREY SMITH, | ) ) ) ) |
| Defendants-Appellees, | ) ) |
| and | ) ) |
| WATERFRONT SERVICES COMPANY, | ) Honorable ) William J. Thurston, |
| Nominal Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiffs, Louie Housman and Albert Johnson, Jr., appeal from an order of the circuit court of Alexander County dismissing the shareholders' derivative complaint that they filed against the defendants, Dana Albright, Deborah Guetterman, David Jackson, and Geoffrey Smith, the president of the board of directors and the chief executive officer of Waterfront Services Company (Waterfront), in their capacities as Waterfront's board of directors (Board). For the following reasons, we reverse the circuit court's dismissal of the plaintiffs' complaint and remand for further proceedings consistent with this opinion.

FACTS

Housman worked for Waterfront, a Delaware corporation, from June 1973 to June

1

2002.  Johnson worked for Waterfront from September 1984 to January 2002.  In June of 2002, Smith fired Housman and other employees in retaliation for their support for and activities on behalf of the Laborers' International Union of North America, Local 773, AFL-CIO (Union).  Housman, other discharged Union employees, and the Union filed suit against Smith and Waterfront for unfair labor practices in violation of the National Labor Relations Act (29 U.S.C.§151 *et seq.* (2000)).  An administrative law judge heard the case and ordered that Housman and other discharged employees be reinstated to their former positions and be compensated for lost wages.  *Waterfront Services Co.*, No. 14-CA-27001 (N.L.R.B. Div. of Judges December 12, 2002).  On December 19, 2003, a three-member panel of the National Labor Relations Board affirmed the decision.  *Waterfront Services Co.*, 340 N.L.R.B. 1305 (2003).

Housman and Johnson participated in Waterfront's "Employee Stock Ownership Plan" (ESOP).  Each participant received an annual "Individual Report of Benefits Statement" showing his account balance and the number of shares allocated to his account.  The most recent statement provided to this court shows that on May 31, 2003, Housman's stock account had a balance of $521,387.56.  The report stated:

> "The stock portion represents 120.02476 shares of Waterfront Services Company Stock.  You are 100% vested in your total account balance ***.  This means you have a vested interest of $521,387.56.  Your shares represent participation in the ownership and success of Waterfront Services Company."

On the same date, Johnson's statement showed an account balance of $34,828.15 and noted:

> "The stock portion represents 8.01753 shares of Waterfront Services Company Stock.  You are 100% vested in your total account balance ***.  This means you have a vested interest of $34,828.15.  Your shares represent participation in the ownership and success of Waterfront Services Company."

The ESOP's assets were placed in a trust and invested primarily in shares of Waterfront common stock. The ESOP gave the trustee, who was appointed and could be removed by the Board, the authority to administer the trust. The trustee was responsible for holding and investing the trust assets in shares of company stock.

In 1991, the ESOP's trustee purchased all the stock from the company's stockholders. The purchased stock was held in a special account known as the "ESOP Suspense Account" and was used as collateral for the ESOP's promise to pay the selling stockholders the agreed-upon purchase price. As the selling stockholders were paid, the ESOP suspense account released shares of the company stock and allocated them to the individual ESOP accounts for all the active participants. The company made cash contributions to the ESOP trust, which held all the assets of the ESOP, in amounts sufficient to permit the trustee to make installment payments due to the selling stockholders. The amount of company stock released from the ESOP suspense account was proportional to the payments made during the year to the selling stockholder. Each year, an independent appraiser valued the company stock that was held in the ESOP. The account was adjusted to reflect allocations of company stock income (including dividends or other credits paid with respect to the shares of stock credited to each account), expenses, and losses. Trust income was allocated, and losses were charged, to each account in the proportion that the value of the account had to the value of all the participants' accounts.

The ESOP specifically stated that a participating employee's interest in the ESOP was invested in shares of company stock held for the employee's benefit by the trustee. The "Committee" had the right to vote and exercise other rights of a company stockholder. In the event of a corporate matter involving a merger or consolidation, recapitalization, reclassification, liquidation, dissolution, or sale or transfer of substantially all the assets of the company, the participating employee was entitled to direct the trustee how to vote the

3

company stock allocated to his or her account. The ESOP allowed the participating employees to sell their stock to the company if they notified the company in writing.

On October 3, 2002, the plaintiffs filed the initial verified shareholders' derivative complaint alleging that Smith had engaged in a scheme of systematic corporate looting and self-dealing by using Waterfront's assets to purchase items for himself and his friends. The plaintiffs made the following allegations against Smith: (1) he awarded a substantial contract to a personal friend to construct Waterfront's new corporate headquarters without seeking competing bids and without regard for the fact that the friend's construction company had never built a structure of the type that Waterfront needed, (2) he used corporate funds to purchase a four-wheel vehicle for his personal use, (3) he used corporate funds to purchase exercise equipment for a gym that only Smith and his friends could use, and (4) he used corporate funds to purchase season tickets for St. Louis Blues hockey games and St. Louis Cardinals baseball games that only Smith and his friends used. The complaint alleged that Smith accomplished this wrongdoing by stacking the Board with his personal friends and Waterfront employees that were loyal to him. The complaint claimed that due to the foregoing events, Waterfront suffered financial injury.

On October 12, 2002, only nine days after the plaintiffs' initial complaint was filed, a letter was sent to all Waterfront ESOP participants, alternate payees, and beneficiaries receiving benefits, informing them that effective April 1, 2002, the company had converted from subchapter C corporate status to subchapter S corporate status. The notice stated that all distributions from the plan made on or after April 1, 2002, would be made in cash only and that no distributions of company stock would be made.

In November of 2002, the defendants filed a notice of removal, seeking to remove this case to federal court. On February 14, 2003, the United States District Court entered an order remanding this case to the state circuit court for a lack of jurisdiction.

4

On June 16, 2003, the defendants filed a motion to dismiss the plaintiffs' amended shareholders' derivative complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2002)).  On February 2, 2004, the circuit court dismissed the plaintiffs' amended complaint without prejudice and granted leave to file an amended pleading.  The court based the dismissal on the plaintiffs' lack of standing as equitable stockholders and specifically stated that Delaware law applied to that issue.  The circuit court also determined that the plaintiffs' claims were not preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 *et seq.* (2000)).

On March 11, 2004, the plaintiffs filed a verified second amended shareholders' derivative complaint, which the circuit court dismissed without prejudice.

On February 24, 2005, the plaintiffs filed a third amended shareholders' derivative complaint, which the circuit court dismissed with prejudice on the ground that the plaintiffs lacked standing to sue under Delaware law because they were not equitable stockholders. The plaintiffs filed a timely notice of appeal.

ANALYSIS

On appeal, the plaintiffs initially argue that the circuit court erred in dismissing their third amended complaint on the basis that they lacked standing as equitable stockholders to bring a shareholders' derivative suit.  We agree.

Motions to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2002)) attack the legal sufficiency of the complaint by raising affirmative matter that avoids the legal effect of or defeats the claim.  *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485 (1994).  The question on a review of a dismissal pursuant to section 2-619 is "whether there is a genuine issue of material fact and whether [the] defendant is entitled to judgment as a matter of law." *Nickum*, 159 Ill. 2d at 494.  The defendant has the burden of proving the affirmative defense relied upon in a section 2-619 motion, and that motion should only be

5

granted if the record establishes that no genuine issue of material fact exists. *Streams Condominium No. 3 Ass'n v. Bosgraf*, 219 Ill. App. 3d 1010, 1013-14 (1991). All well-pleaded facts and reasonable inferences are accepted as true. *In re Marriage of Diaz*, 363 Ill. App. 3d 1091, 1094 (2006). However, conclusions of law are not accepted as true. *In re Marriage of Sullivan*, 342 Ill. App. 3d 560, 563 (2003). Thus, the standard of review for a dismissal based on section 2-619 is *de novo*. *Feret v. Schillerstrom*, 363 Ill. App. 3d 534, 538 (2006).

To determine whether the plaintiffs have standing to sue, we must first determine whether Illinois law or Delaware law applies.

Waterfront is a Delaware corporation, and Illinois courts apply the law of the state of incorporation. See *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 667 (1996). Delaware law governs any derivative claims brought on the corporation's behalf or any individual claims brought by its stockholders. See *Seinfeld v. Bays*, 230 Ill. App. 3d 412, 420 (1992).

According to Delaware law, "In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law." Del. Code Ann. tit. 8, §327 (2002). Pursuant to Delaware law, for purposes of instituting a derivative action, an "equitable" owner is considered a stockholder with standing to sue. Del. Code Ann. tit. 8, §327 (2002); see *Harff v. Kerkorian*, 324 A.2d 215 (Del. Ch. 1974), *modified on other grounds*, 347 A.2d 133 (Del. 1975). An "equitable owner" or "beneficial owner" is defined as follows:

> "1. One recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else; esp., one for whom property is held in trust. – Also termed *equitable owner*. 2. A corporate

6

shareholder who has the power to buy or sell the shares, but who is not registered on the corporation's books as the owner." (Emphasis in original.) Black's Law Dictionary 1130 (7th ed. 1999).

Although Delaware has not defined "equitable stockholder," the chancery court in Delaware, a court with solely equity jurisdiction, has conferred equitable or beneficial ownership onto numerous plaintiffs, enabling them to institute shareholders' derivative proceedings. See *Jones v. Taylor*, 348 A.2d 188 (Del. Ch. 1975) (a contract to receive half of the stock or the proceeds thereof in a will not yet in effect was sufficient to confer equitable standing); *Brown v. Dolese*, 154 A.2d 233 (Del. Ch. 1959) (the beneficiaries' shares were held in the name of a trustee who refused to sue on behalf of the trust), *aff'd*, 157 A.2d 784 (Del. 1960); *Gamble-Skogmo, Inc. v. Saks*, 122 A.2d 120 (Del. 1956) (a stockholder holding stock in a margin account was considered an equitable owner); *Taormina v. Taormina Corp.*, 78 A.2d 473 (Del. Ch. 1951) (the executors and administrators of an estate had equitable standing); *Rosenthal v. Burry Biscuit Corp.*, 60 A.2d 106, 112 (Del. Ch. 1948) (equitable standing was conferred on the holders of stock represented by street certificates in the names of brokers). Additionally, several state and federal jurisdictions, including Delaware, have recognized the standing of trust beneficiaries to pursue corporate derivative claims. *Silling v. Erwin*, 881 F. Supp. 236 (S.D. W. Va. 1995); *Cassata v. Cassata*, 148 A.D.2d 944, 538 N.Y.S.2d 960 (1989); *Edgeworth v. First National Bank of Chicago*, 677 F. Supp. 982 (S.D. Ind. 1988); *Pearce v. Superior Court of Kern County*, 149 Cal. App. 3d 1058, 197 Cal. Rptr. 238 (1983); *Jones*, 348 A.2d at 191.

We decline to support an inflexible basis for stockholder identity where the equitable owner of the stock is seeking to protect corporate interests, as in the instant case. See *Rosenthal*, 60 A.2d at 112.

In the case at bar, we find the West Virginia Supreme Court's *State ex rel. Elish v.*

7

*Wilson*, 189 W. Va. 739, 434 S.E.2d 411 (1993), decision instructive. In *Wilson*, active participants of Weirton Steel's ESOP filed a shareholders' derivative action against the corporation and its officers and directors for the breach of fiduciary duties. The defendants argued that the plaintiffs lacked standing because West Virginia, the situs of Weirton Steel, like Illinois in the instant case, required that the plaintiffs in a derivative suit be stockholders of record. The *Wilson* court determined that Delaware law applied to the controversy due to the fact that Weirton Steel was a Delaware corporation and the battle over who could participate in a shareholders' derivative suit was a struggle peculiar to the corporation itself. The *Wilson* court then decided that the ESOP beneficiaries were equitable stockholders with standing to sue pursuant to Delaware law even if the ESOP trustee also had standing.

In the instant case, the ESOP specifically stated that a participating employee's interest in the ESOP was invested in shares of company stock, which were held for the employee's benefit by the trustee. Both Housman and Johnson owned several shares of stock that were fully vested and credited to their ESOP accounts. Although the "Committee" had the right to vote and exercise other rights of a company stockholder, in the event of a corporate matter involving a merger or consolidation, recapitalization, reclassification, liquidation, dissolution, or sale or transfer of substantially all the assets of the company, the participating employee was entitled to direct the trustee how to vote the company stock allocated to his or her account. Moreover, all of Waterfront's stock is owned through the ESOP plan. If the ESOP participants are not permitted to participate in a shareholders' derivative suit, no one can sue other than the trustee, who refused to sue. We agree with *Wilson* that the Delaware legislature could not have intended such an absurd result. ESOP stockholders must be left with some type of recourse if the trustee is unable or unwilling to sue the officers of the corporation for a breach of their fiduciary duties. Hence, the ESOP participants in the present case are equitable stockholders and have standing to maintain a shareholders'

8

derivative suit pursuant to Delaware law.

The defendants counter that ERISA (29 U.S.C. §1001 *et seq.* (2000)) preempts state law and provides a proper recourse for the ESOP participants in the instant case. We disagree.

According to ERISA's preemption clause, "[ERISA] shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ***." 29 U.S.C. §1144(a) (2000). The United States Supreme Court has stated that a state law "relates to" an employee benefit plan " 'if it has a connection with or reference to such a plan.' " *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139, 112 L. Ed. 2d 474, 484, 111 S. Ct. 478, 483 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 77 L. Ed. 2d 490, 501, 103 S. Ct. 2890, 2900 (1983)). The United States Supreme Court has repeatedly acknowledged the reach of the language in order to reinforce Congress's intent to establish an area of exclusive federal concern. See *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 324, 136 L. Ed. 2d 791, 799, 117 S. Ct. 832, 837 (1997). The Court has stated:

> "We have long acknowledged that ERISA's pre[]emption provision is 'clearly expansive.' [Citation.] It has
>
>> 'a "broad scope" [citation] and an "expansive sweep" [citation]; and ... it is "broadly worded" [citation], "deliberately expansive" [citation], and "conspicuous for its breadth" [citation].' *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384[, 119 L. Ed. 2d 157, 167, 112 S. Ct. 2031, 2037] (1992)."
>
> *Dillingham Construction, N.A., Inc.*, 519 U.S. at 324, 136 L. Ed. 2d at 799, 117 S. Ct. at 837.

However, ERISA's preemption provision does not foreclose every state action that affects ERISA plans. *Atlantis Health Plan, Inc. v. Local 713*, 258 F. Supp. 2d 284, 290

(S.D.N.Y. 2003). In *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655, 131 L. Ed. 2d 695, 705, 115 S. Ct. 1671, 1677 (1995), the United States Supreme Court acknowledged as follows:

"If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre[]emption would never run its course, for 'really, universally, relations stop nowhere' [citation]. But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre[]emption out of the law whenever Congress speaks to the matter with generality."

Preemption must have its limits because otherwise it would effectively drag into federal court "many ordinary state common law causes of action that rightfully fall within the purview of adjudication by state courts, as well as state law claims that implicate federal law as ancillary issues or defenses that state courts are suitably equipped and concurrently empowered to resolve–litigation that need not add its incremental burden to the federal docket." *Atlantis Health Plan, Inc.*, 258 F. Supp. 2d at 291.

In the instant case, the defendants bear the burden of overcoming the presumption that Congress, in enacting ERISA, did not intend to supplant state law, especially traditional areas under state control, such as corporate law. See *In re World Trade Center Disaster Site Litigation*, 270 F. Supp. 2d 357, 367 (S.D.N.Y. 2003), *aff'd on other grounds*, 414 F.3d 352 (2d Cir. 2005). As long as a state law " ' "does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the [law] has some economic impact on the plan does not require that the [law] be invalidated." ' " *Airparts Co. v. Custom Benefit Services of Austin, Inc.*, 28 F.3d 1062, 1065 (10th Cir. 1994) (quoting *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.*, 944 F.2d 752, 754 (10th Cir. 1991) (quoting *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir. 1984))).

As stated in section 1001(b) of ERISA (29 U.S.C. §1001(b) (2000)), Congress enacted

10

ERISA to "protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, \*\*\* by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." ERISA imposes high standards of fiduciary duty upon those responsible for *administering* an ERISA plan and *investing* and *disposing* of its assets. The ERISA fiduciary is subject to a strict standard of care (29 U.S.C. §1104(a)(1) (2000)), is liable for known breaches by cofiduciaries (29 U.S.C. §1105 (2000)), and may not engage in prohibited transactions (29 U.S.C. §1106 (2000)). One of the primary purposes for the enactment of ERISA was to establish " 'standards of conduct, responsibility, and obligation for *fiduciaries of employee benefit plans*.' " (Emphasis added.) *Ellis v. Hollister, Inc.*, Nos. S-05-559 & S-05-1726, slip op. at 6 (E.D. Cal. April 14, 2006) (quoting 29 U.S.C. §1001(b) (2000)).

In *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988), the defendants, who were both company executives and plan fiduciaries, refused to allow the plaintiffs to remain on the payroll after the plant was sold so they could become eligible for early retirement benefits. The plaintiffs sued and argued that the defendants had a duty as plan fiduciaries to act in a manner that was most beneficial to the plan participants. In *Hickman*, the court determined that the defendants were not subject to ERISA's fiduciary duty requirements because their action was a " 'day-to-day corporate business transaction' " made in their capacity as corporate officers, not as plan administrators. *Hickman*, 840 F.2d at 566 (quoting *Phillips v. Amoco Oil Co.*, 614 F. Supp. 694, 718 (N.D. Ala. 1985), *aff'd*, 799 F.2d 1464 (11th Cir. 1986)). The *Hickman* court held, "ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets." *Hickman*, 840 F.2d at 566; see also *Adams v. LTV Steel Mining Co.*, 936 F.2d 368, 370 (8th Cir. 1991); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 918-19 (3d

11

Cir. 1990); *Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1416-17 (2d Cir. 1985); *United Paperworkers International Union v. Jefferson Smurfit Corp.*, 771 F. Supp. 992, 999 (E.D. Mo. 1991), *aff'd*, 961 F.2d 1384 (8th Cir. 1992); *Moehle v. NL Industries, Inc.*, 646 F. Supp. 769, 779 (E.D. Mo. 1986), *aff'd*, 845 F.2d 1027 (8th Cir. 1988).

In *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992), the court concluded that the *Hickman* analysis applied with equal force when the ERISA plan was an ESOP. The *Martin* court stated that virtually all of an employer's significant business decisions affect the value of its stock and the benefits that ESOP plan participants will ultimately receive. *Martin*, 965 F.2d at 666. However, pursuant to section 1104 of ERISA (29 U.S.C. §1104 (2000)), ERISA's fiduciary duties attach only to transactions that involve *investing* the ESOP's assets or *administering* the plan. *Martin*, 965 F.2d at 666; accord *Canale v. Yegen*, 782 F. Supp. 963, 967 (D.N.J. 1992). In fact, the *Martin* court correctly noted that a broader rule would make ESOP fiduciaries virtual guarantors of the financial success of the plan.

In the instant case, the complaint's allegations do not implicate fiduciary duties arising pursuant to ERISA. The complaint did not allege that the defendants mismanaged the ERISA plan or that the trust was directly involved in any improper transactions. Additionally, the complaint shows that the plaintiffs' claim has nothing to do with regulating the type of benefits or the terms of the plan; it does not create reporting, disclosure, funding, or vesting requirements for the plan; it does not affect the calculation of benefits; and it is not a common law rule designed to rectify faulty plan administration. See *Airparts Co.*, 28 F.3d at 1065. The plaintiffs in the instant case brought this action against the defendants in their separate capacities as the officers and directors of the corporation, not in their capacities as plan fiduciaries. See *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1465 (5th Cir. 1986) (the court recognized that the fiduciary duties of a corporate director coexisted with the duties entrusted to an ERISA plan fiduciary

but also existed independently from the plan itself); *Richmond v. American System Corp.*, 792 F. Supp. 449 (E.D. Va. 1992) (the court recognized that even though the fiduciary duties of state corporate law and ERISA are parallel, they were independent in a shareholders' derivative action).

In the instant case, the plaintiffs alleged that Smith diminished Waterfront's stock value through self-dealing and waste in the day-to-day operations of the company and that the remaining defendants did nothing to protect the stockholders. ERISA does not create fiduciary duties for day-to-day operations even though they inevitably affect the beneficiaries of the ESOP. See *Martin*, 965 F.2d at 665-66. In summary:

> "ERISA preempts state laws that impinge or encroach upon federal control over the *regulation* or *administration* of covered plans. [Citation.] But, curbing the breadth of the statute, preemption does not extend to state laws that have only a 'tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.' [Citations.]" (Emphasis added.) *Atlantis Health Plans, Inc.*, 258 F. Supp. 2d at 292.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Alexander County dismissing the plaintiffs' third amended shareholders' derivative complaint with prejudice is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed; cause remanded.

GOLDENHERSH and CHAPMAN, JJ., concur.

13

NO. 5-05-0270

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| LOUIE HOUSMAN and ALBERT JOHNSON, JR., | ) | Appeal from the Circuit Court of Alexander County. |
| Plaintiffs-Appellants, | ) | |
| v. | ) | No. 02-CH-021 |
| DANA ALBRIGHT, DEBORAH GUETTERMAN, DAVID JACKSON, and GEOFFREY SMITH, | ) | |
| Defendants-Appellees, | ) | |
| and | ) | |
| WATERFRONT SERVICES COMPANY, | ) | Honorable William J. Thurston, |
| Nominal Defendant-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed**:            August 9, 2006

_____

**Justices**:         Honorable Terrence J. Hopkins, J.

Honorable Richard P. Goldenhersh, J.
Honorable Melissa A. Chapman, J.
Concur

_____

**Attorneys for Appellants**         Seth D. Rigrodsky, Jennifer K. Hirsh, Milberg Weiss Bershad & Schulman LLP, One Pennsylvania Plaza, New York, NY 10119; Ralph N. Siammi, Milberg Weiss Bershad & Schulman LLP, 919 N. Market Street, Suite 411, Wilmington, DE 19801; Mark A. Kochan, Kochan & Kochan, 121 West Cherry Street, Herrin, IL 62948

_____

**Attorneys for Appellees**         Eric D. Martin, Blackwell Sanders Peper Martin LLP, Mark Twain Plaza One, 101 W. Vandalia Street, Suite 320, Edwardsville, IL 62025; Jeffrey A. Goffinet, Brandon, Schmidt, Goffinet & Solverson, 916 West Main Street, P.O. Box 3898, Carbondale, IL 62902-3898

_____