A08A1891. KELLEY MANUFACTURING COMPANY
v. MARTIN et al.
(674 SE2d 92)

SMITH, Presiding Judge.

Kelley Manufacturing Company (KMC) appeals from the trial court's denial of its motion for judgment on the pleadings of Timothy J. Maxwell and James L. Martin. Maxwell and Martin filed this action seeking inspection of corporate records pursuant to OCGA §§ 14-2-1602 through 14-2-1604. We affirm.

In reviewing a trial court's denial of a motion for judgment on the pleadings, we must determine

whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. All well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts.

(Citations and punctuation omitted.) *Southwest Health & Wellness, LLC v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006). Accordingly, a motion for judgment on the pleadings "should be granted only where the pleadings disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." (Citation omitted.) *Blier v. Greene*, 263 Ga. App. 35 (587 SE2d 190) (2003).

So viewed, the allegations show that KMC's Employees Stock Ownership Plan (ESOP) was established in 1990 and is subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC § 1001 et seq. All contributions to the plan are made by KMC to the ESOP on an annual basis. Each participant's ESOP account is credited annually with a contribution based upon the employee's compensation. KMC's annual contribution is generally made in cash and the ESOP is invested in KMC stock. One hundred percent of KMC's stock is owned by the ESOP.

E. Lanier Carson, former part-owner of KMC, announced his retirement from KMC in October 2006. James L. Martin, a 21-year employee of KMC, was elected by the board of directors as chairman of the board at that time and, in December 2006, he became chief executive officer of KMC. Timothy J. Maxwell, a 14-year employee, worked his way up to vice president of operations by 2004. Following Carson's retirement, Maxwell was approved by the board to be voted on by the employees as co-trustee with Martin of the ESOP. On December 14, 2006, Maxwell was named as president of KMC and remained a member of the board of directors.

After leaving KMC in November 2006, Carson developed a personal dispute with Martin and Maxwell following their decision not to continue the employment of KMC's and Carson's farm manager. On February 8, 2007, Carson wrote a letter to Martin as chairman and chief executive officer of KMC expressing his anger at Maxwell and disagreements about the operation of the farm.

On March 8 and March 30, 2007, Maxwell and Martin, respectively, were terminated from employment by KMC, based on Car-

son's vote of 135 employees' proxies and powers of attorney. Also, on March 8, both were removed as trustees of the ESOP and Lanier Carson was voted the sole trustee of the ESOP and chairman of the board of directors of KMC. According to their separation notices, Maxwell and Martin were removed and terminated based on the majority of the employees having signed powers of attorney or other proxies to Lanier Carson requesting that Maxwell and Martin be fired and removed as trustees of the ESOP. The March 8, 2007 minutes of the board of directors reflect that "[i]f we don't approve these [terminations], the employees and the ESOP participants would recommend that the company be sold." Later, the board of directors also made Carson the chief executive officer of KMC.

As former employees of KMC, Martin and Maxwell maintained their interests in the ESOP. In fact, Martin's ESOP account is the largest single owner of an interest in KMC, reflecting 1,936.515 shares. Together, his and Maxwell's accounts are worth close to $750,000. Through counsel, on May 9, 2007, Martin and Maxwell sent a letter requesting to inspect and copy various corporate documents, including copies of the proxies/powers of attorney relied upon by the board to terminate them and a list of the shareholders at that time. KMC allowed inspection of a number of documents, as a letter from KMC's counsel stated: "KMC has provided all information you requested in the nature of minutes and other documentation of corporate meetings which a *shareholder* is entitled to review to confirm the action of the Board of Directors." (Emphasis supplied.) KMC, however, refused to allow access to the proxies/ powers of attorney and the list of shareholders, despite repeated requests.

On September 19, 2007, Maxwell and Martin filed their petition for inspection of corporate records, pursuant to OCGA §§ 14-2-1602 through 14-2-1604 and the common law. Following KMC's filing of an answer, counterclaim, and motion for judgment on the pleadings, Maxwell and Martin filed an amended petition, again seeking access to the proxies/powers of attorney and list of shareholders. Following a combined hearing on KMC's motion for judgment on the pleadings and the amended petition for inspection, the trial court entered its order allowing inspection and denying KMC's motion. This appeal followed.

1. KMC argues[1] that Maxwell and Martin did not have standing

---

[1] In its first enumeration, KMC attacks the denial of its motion for judgment on the pleadings and, in its fourth enumeration, KMC attacks the granting of the petition for inspection. They are considered together.

to pursue inspection of the corporation's documents because they were not "shareholders" as defined by the business corporations code.

OCGA § 14-2-140 (27), formerly OCGA § 14-2-140 (25), defines "shareholder" as "the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." OCGA § 14-2-1602 (g) also provides that, for "purposes of this Code section, 'shareholder' includes a beneficial owner whose shares are held in a voting trust or by a nominee on his behalf."

As set out above, 100% of the shares of KMC are owned by the ESOP, which is the registered owner in corporate documents. There is no nominee or voting trust on file with KMC regarding these shares. The statement of account issued yearly to each ESOP participant, however, reflects that the account is measured in "shares" vested in that participant. Also, as reflected in KMC's counsel's letter, quoted above, ESOP participants were referred to as shareholders. Although acknowledging that the ESOP is the "record owner of shares," the trial court nonetheless concluded that all the KMC ESOP participants were the beneficial owners of the shares and entitled to exercise shareholders' rights, including inspection of the requested records.

Although we have found no Georgia authority on this specific issue, we are persuaded, as was the trial court, by cases from other jurisdictions which have considered the issue. In *Housman v. Albright*, 368 Ill. App. 3d 214 (857 NE2d 724) (2006) and *State ex rel. Elish v. Wilson*, 189 W. Va. 739 (434 SE2d 411) (1993), ESOP participants filed shareholder derivative suits challenging corporate actions. Both suits were defended with the claim that ESOP participants lacked standing as shareholders. Both courts found that, although the ESOP participants did not meet the technical definitions of shareholders in the relevant statutes, they were "equitable owners" entitled to pursue their claims. *Housman*, supra, 368 Ill. App.3d at 218-220; *Elish*, supra, 189 W. Va. at 743-746. See also *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F3d 653, 665-666 (III) (7th Cir. 2005) (ESOP participant found to be shareholder with the right to inspect corporate records under the Illinois Business Corporation Act).

Therefore, there was no error in the trial court's finding that Martin and Maxwell qualified as shareholders under OCGA §§ 14-2-1602 through 14-2-1604.

2. In its second and fifth enumerations,[2] KMC argues that the trial court erred in finding that ERISA does not preempt Martin and Maxwell's request for inspection.

With the exception of four narrow exclusions not relevant in this case, Congress has mandated that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan. . . ." (Emphasis supplied.) 29 USC § 1144 (a); *Whitaker v. Texaco, Inc.*, 566 FSupp. 745, 748 (1983). In determining whether a state action relates to an ERISA covered plan, "the 'relate to' language of § 1144 (a) has been broadly interpreted by the United States Supreme Court to effectuate the intent of Congress that regulation of employee benefit plans be exclusively a federal concern." *Norton v. North Ga. Foods*, 211 Ga. App. 684, 686 (440 SE2d 263) (1994), citing *Ingersoll-Rand Co. v. McClendon*, 498 U. S. 133, 137-138 (111 SC 478, 112 LE2d 474) (1990); see *Housman*, supra, 368 Ill. App. 3d at 221.

> Where a state law tort action is "based on alleged improper processing of a claim for benefits under an employee benefit plan," that claim absolutely "relates to" the plan. A claim will also be preempted where the terms or existence of the plan is "a critical factor in establishing liability."

(Citations and footnotes omitted.) *Advance PCS v. Bauer*, 280 Ga. 639, 641 (1) (632 SE2d 95) (2006). See also *Franklin v. QHG of Gadsden, Inc.*, 127 F3d 1024, 1028 (11th Cir. 1997).

Here, however, Maxwell and Martin are not seeking to enforce any rights or benefits bestowed upon them by the ESOP, but merely seek access to records reflecting a vote on corporate matters involving employment and their positions as trustees of the ESOP. We find their claims do not "relate to" the plan so as to preempt their claims. See *Homes of Ga. v. Humana Employers Health Plan*, 282 Ga. App. 802, 804-805 (1) (a), (b) (640 SE2d 313) (2006) (In challenging overcharges for premiums, HGI did not seek benefits or to enforce rights related to the plan, but independent rights arising under the insurance code and the contract between HGI and Humana.).

3. In its third and sixth enumerations,[3] KMC argues that the trial court erred in concluding Maxwell and Martin sought the records for a proper purpose.

---

[2] The second enumeration deals with the denial of KMC's motion for judgment on the pleadings and the fifth deals with the grant of the petition for inspection. They are addressed together.

[3] The third enumeration challenges denial of its motion for judgment on the pleadings while the sixth challenges grant of the motion to inspect. They are considered together.

An applicant for an order to inspect and copy corporate records bears "the burden of showing a proper purpose as to specific materials," and the trial court has

> much discretion . . . to determine whether the purpose named is a proper one, whether the request is vexatious or arising from idle curiosity, whether the documents called for are relevant, material, and not over burdensome, [and] whether granting the requests would violate principles of confidentiality. . . .

*Riser v. Genuine Parts Co.*, 150 Ga. App. 502, 505 (2) (258 SE2d 184) (1979) (construing predecessor to OCGA § 14-2-1604 (OCGA § 14-2-122 (d) & (e); see former Code 1933, § 22-613)); see also *McLean v. Turtle Cove Property Assn.*, 222 Ga. App. 709, 711 (2) (475 SE2d 718) (1996). We have held also that a trial court's findings with respect to whether an applicant has shown a "proper purpose" to compel production of corporate documents must stand unless it is clearly erroneous. See *Stewart v. Bank of Lumber City*, 193 Ga. App. 188, 189 (1) (387 SE2d 366) (1989).

Maxwell and Martin sought inspection to enforce KMC's bylaws by ensuring proper corporate governance and determining if corporate waste, mismanagement, and other breaches of fiduciary duty were occurring; to inspect corporate records to protect their substantial ownership interest as well as the interest of other shareholders; and to inspect records related to their removal as trustees, directors, officers, and employees of KMC. The trial court found these to be proper purposes, and we agree. See *Parker v. Clary Lakes Rec. Assn.*, 243 Ga. App. 681, 683 (534 SE2d 154) (2004); see also *Southern Acceptance Corp. v. Nally*, 222 Ga. 534 (150 SE2d 653) (1966); *G.I.R. Systems v. Lance*, 219 Ga. App. 829, 830-831 (2) (466 SE2d 597) (1996).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 20, 2009

*Reinhardt, Whitley, Wilmot, Summerlin & Pittman, George R. Reinhardt, Jr.*, for appellant.
*Helms & Helms, Jack J. Helms, Jr.*, for appellees.