FLEETBOSTON FINANCIAL
CORPORATION, et al.,
Plaintiffs

v.

Eric E. ALT, et al., Defendants.

Civil Action No. 03–10597–EFH.

United States District Court,
D. Massachusetts.

Dec. 1, 2009.

Alicia L. Downey, Lisa E. Kirby, Laura K. Langley, S. Elaine McChesney, Bingham McCutchen LLP Boston, MA, for Plaintiffs.

Edward Foye, Kevin T. Peters, J. Owen Todd, Todd & Weld LLP, Boston, MA, Michael E. Grenert, James R. Hubbard, Jeffrey Liddle, Liddle & Robinson, L.L.P., New York, NY, James H. Rollinson, Baker & Hostetler LLP, Cleveland, OH, for Defendants.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

Counterdefendants' Motion for Summary Judgment (Docket No. 154) is allowed. The counterplaintiffs have no cause of action for breach of fiduciary duty because they were not stockholders of the Robertson Stephens Group, Inc. It is axiomatic that there must be a fiduciary relationship for there to be a breach thereof.

*Background*

The plaintiff and counterdefendant in this action is FleetBoston Financial Corporation ("FleetBoston"), and the defendants and counterplaintiffs are 42 former employees of Robertson Stephens, Inc. ("RSI"), referred to by the name of one of the employees, "ALT."

RSI was an investment banking firm owned by Robertson Stephens Group, Inc. ("RS Group"). RS Group was a wholly owned subsidiary of FleetBoston. As part of its compensation package, FleetBoston awarded ALT restricted stock units ("RSUs") in RS Group pursuant to both the Robertson Stephens Restricted Unit Plan (the "Plan") and Restricted Unit Award Agreements (the "Agreements"). FleetBoston closed RSI on July 12, 2002 and terminated its employees, including ALT, the same day.

On December 11, 2002, ALT filed an arbitration claim against RSI, RS Group, FleetBoston and Fleet Securities, Inc. (collectively, the "Banks") at the New York Stock Exchange. ALT argued that the Banks had deprived ALT of promised compensation by breaching certain compensation agreements that the Banks had with ALT, including the Plan and Agreements. ALT included five claims in their arbitration complaint: a Worker Adjustment and Retraining Notification Act ("WARN Act") claim, a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, a fraud claim, a breach of contract claim and a negligence claim. ALT also originally included a breach of fiduciary duty claim in their arbitration complaint, but withdrew it during the arbitration hearings. Meanwhile, the Banks filed an action in Massachusetts Superior Court on March 24, 2003 to stay the arbitration, which ALT removed to this court (the "Court Case") on April 1, 2003. ALT removed the case to this court based on federal question jurisdiction. The Banks' claims related to the WARN Act, 29 U.S.C. § 2101, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* ALT moved to transfer the Court Case to the Southern District of New York on April 8, 2003. On the same day, the Banks moved to have the Court Case remanded back to the Superior Court.

On April 22, 2003, the court denied the motion to transfer, denied the motion to remand and stayed the Court Case pending resolution of the arbitration. The Court Case remained dormant for about four and a half years, except for a counterclaim that the court allowed ALT to file against the Banks on July 6, 2004. The arbitration proceeded and on September 12, 2007, the arbitration panel found in favor of 27 of the 42 members of ALT, awarding them approximately 23 million dollars (including interest). The arbitration decision does not discuss how the awards reflect ALT's claims. In other words, the arbitration panel did not articulate on which claims it found in favor of the successful members of ALT and how much weight each claim carried in the overall award.

Given that the arbitration had concluded, the court lifted its stay on the Court Case on December 21, 2007. ALT amended their counterclaim on January 30, 2008 and the counterclaim now included only FleetBoston and RS Group as counterde-

fendants. Meanwhile, FleetBoston and RS Group's own claims in the Court Case had been resolved since they related exclusively to matters decided in the arbitration; all that remained of the Court Case was ALT's counterclaim. FleetBoston and RS Group filed a motion to confirm the arbitration award on March 31, 2008, which the court granted on July 23, 2008. On July 31, 2008, the court granted partial summary judgment to FleetBoston and RS Group on six of the eight counts in ALT's counterclaim. The court allowed partial summary judgment on the basis of *res judicata*. Most important to the matter at hand, the court applied *res judicata* to a breach of contract allegation pertaining to the Agreements, which are at the heart of the Court Case.

Only two of the counterclaim's counts remained in the Court Case after this decision. One count, against both FleetBoston and RS Group, alleged a violation of the Massachusetts consumer protection statute, M.G.L. ch. 93A. The second count, a breach of fiduciary duty claim, was against FleetBoston only. ALT allege that FleetBoston, as the majority stockholder of RS Group, breached the fiduciary duty it owed to ALT as the minority stockholders of RS Group. Close to a year later, on July 22, 2009, the parties stipulated to the dismissal of the 93A claim, leaving the breach of fiduciary duty claim against FleetBoston as the only claim remaining in the Court Case. This stipulation also eliminated RS Group as a counterdefendant to this suit.

The court originally dismissed FleetBoston's instant motion for summary judgment on the ground that it was untimely, issuing its dismissal on June 29, 2009, before ALT had the opportunity to submit an opposition memorandum. On September 22, 2009, the court vacated this ruling and notified the parties that the court would reconsider FleetBoston's motion for sum-

mary judgment as to one issue only, whether ALT were stockholders of RS Group. ALT thereafter submitted their opposition brief, focusing only on their alleged stock ownership in RS Group.

*Analysis*

There are four parts to the court's decision. First, most importantly, ALT were not stockholders of RS Group and therefore they have no cause of action for breach of fiduciary duty. Second, ALT are prohibited from claiming that they were stockholders under the doctrine of judicial estoppel. Third, ALT's *sole* basis for their stockholder status, the testimony of Lisa Bisaccia, does not help ALT's position, but in fact undermines it. Fourth, ALT were not equitable stockholders of RS Group.

The court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits" show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2); *see also Bienkowski v. Ne. Univ.*, 285 F.3d 138, 140 (1st Cir.2002). The facts must be viewed in the light most favorable to the non-moving party. *Bienkowski*, 285 F.3d at 140.

■ First, and most importantly, ALT lack what is required to bring a minority stockholder breach of fiduciary duty claim because ALT never were stockholders of RS Group. An obvious requirement for a breach of fiduciary duty claim by a minority stockholder against a majority stockholder is that the plaintiff be a stockholder. According to Delaware law, an individual retains no stockholder rights unless he is a stockholder. *Salt Dome Oil Corp. v. Schenck*, 41 A.2d 583, 589 (Del.1945).

■ The record reveals that ALT cannot show any stock ownership in RS Group and in the absence of stock ownership, ALT have no cause of action for breach of fiduciary duty. Each employee had both the Plan and an Agreement associated with his RSUs. Two elements of the Plan clearly show that ALT were not stockholders and that their breach of fiduciary duty claim therefore cannot proceed any further. The Plan was the same for all employees, but the Agreement was distinct for each employee. The Plan is the more important document, as the Agreement is subject to the terms of the Plan and the Plan controls in the event there is a conflict between the Plan and the Agreement. (RSU Agreement § 2; RSU Plan § 2.4) More important to the matter at hand, the court need only rely on the Plan, and need not consider the Agreements, to conclude that ALT were not stockholders of RS Group.

First, the Plan explicitly states that the ownership of RSUs does not provide ALT with any stockholder rights. (RSU Plan § 7.9) Second, the Plan sets out three conditions, any one of which, will grant the plan participant stockholder status. A plan participant can become a stockholder if (i) shares of common stock are issued and transferred to him, or (ii) he is entered as the recordholder in the records of RS Group's transfer agent or (iii) he is entered as the recordholder in the records of the Depositary Trust Corporation. *Id.*

It is evident that ALT satisfied none of these three conditions and ALT even *admit* so. In their summary judgment memorandum, ALT dismiss the conditions as mere "ministerial acts," even though they were the exclusive means by which a plan participant could become a stockholder. These conditions were an essential element of the Plan, far from ministerial in nature, and the court doubts that ALT treated

them as such when they entered into the Plan. In sum, ALT were not *stockholders* as holders of RSUs and they never acquired stockholder status. Without standing as stockholders of RS Group, ALT have no cause of action for breach of fiduciary duty.

■ In addition, the principle of judicial estoppel precludes ALT's claim that they owned stock in RS Group. Judicial estoppel forbids a party from taking a position in one legal proceeding that is contrary to its position in an earlier proceeding. *Altern. Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 33 (1st Cir.2004); *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.,* 834 F.2d 208, 212 (1st Cir.1987). The First Circuit holds that judicial estoppel applies when a party is "playing fast and loose with the courts." *Altern. Sys.,* 374 F.3d at 33 (quoting *Patriot Cinemas,* 834 F.2d at 212). Judicial estoppel protects the integrity of the judicial process by assuring that litigants cannot manipulate judicial procedure to convenience themselves. *Altern. Sys.,* 374 F.3d at 33.

■ As part of the arbitration, which included a breach of contract claim, ALT argued that they were not stockholders of RS Group, directly contradicting their present argument that they were stockholders of RS Group. Indeed, ALT's lack of stock ownership was central to their advocacy in the arbitration. ALT's counsel explicitly stated during the arbitration that stock was not transferred, nor were ALT recorded as stockholders by the Depositary Trust Corporation or by the transfer agent for RS Group. (Liddle Arb. Hr'g 139, Jan. 4, 2005; 16549, June 6, 2007) In short, ALT admitted that not one of the three conditions granting them stockholder status occurred. Twenty-seven members of ALT secured a favorable arbitration judgment, winning around 23 million dollars including interest.

Judicial estoppel forbids ALT's claim here. In the matter at hand, ALT are "playing fast and loose" with the court; they argued that they were not stockholders as part of the arbitration and they now take a stance completely contrary to their arbitration position, even though the arbitration panel awarded 23 million dollars to members of ALT. ALT do not have a valid breach of fiduciary duty action because judicial estoppel prevents them from contending that they were RS Group stockholders.

ALT's argument that they were stockholders of RS Group rests entirely on the arbitration testimony of Lisa Bisaccia, who was FleetBoston's Director of Compensation and the administrator of the Plan when RSI closed its operations. ALT claim that they were stockholders because Bisaccia testified that FleetBoston had recorded ALT as vested stockholders in RS Group's books and records. Bisaccia's testimony, however, does not support ALT's position, but in fact contradicts and damages it. There are at least four facts undermining ALT's argument with respect to Bisaccia's testimony.

First, a close examination of Bisaccia's testimony reveals that she did not state that ALT were *in fact* legal stockholders, but only that they were *recorded* as stockholders in RS Group's books and records.[1] This is no minor distinction. Being recorded as a stockholder is not the same as actually being a stockholder with all of the rights and privileges attendant to such a position. ALT overlook that Bisaccia clearly stated in her testimony that she did not believe that ALT were in fact legal stockholders. Bisaccia was asked "would it be your understanding that after a por-

tion of these shares vested that the party in whom they vested *was in fact a shareholder?*" to which she replied "No. This was a restricted unit plan. My understanding was there was an obligation but they weren't a shareholder until the six-month put call had been exercised." Bisaccia goes on to explain that she believed that none of the employees had exercised their "put call." (Bisaccia Arb. 1506–07)

Second, Bisaccia's testimony is immaterial because even if Bisaccia had said ALT were stockholders, and she did not make such an averment, the Plan clearly states what conditions qualify for stockholder status. A declaration by Bisaccia is not one of those conditions. Third, such a statement would further be immaterial because Delaware law clearly mandates that only the Board of Directors can authorize the issuance of stock. *Grimes v. Alteon Inc.*, 804 A.2d 256, 261 (Del.2002). Given that Bisaccia was not a member of the board of directors, she had no authority to issue stock. Fourth, the keeper of records for RS Group, Steven Monaco, declared as part of FleetBoston's motion for summary judgment that company records reflect that ALT were not issued stock of RS Group, and that ALT were not recorded as stockholders in the transfer agent or in the Depositary Trust Corporation. ALT present no evidence contradicting Monaco's declaration. *Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 856 (1st Cir.2008) (court considers uncontradicted declarations). In sum, Bisaccia's arbitration testimony does nothing to help ALT's breach of fiduciary duty claim, but instead only weakens it.

██ As an alternative argument, ALT claim that they were equitable stockholders of RS Group.[2] This argument fails.

---

1. This type of recording contrasts with the two kinds that *would have provided ALT with stockholder status*. Bisaccia did not state that ALT were recorded as the stockholders in RS

Group's transfer agent or in the Depositary Trust Corporation.

2. ALT never alleged that they were equitable stockholders in the complaint, a failure which

Delaware law recognizes equitable ownership of stock when (i) the contested stock has been issued and (ii) someone other than the person or entity seeking equitable stockholder rights holds legal title to the stock. *See Jones v. Taylor,* 348 A.2d 188 (Del.Ch.1975); *see Housman v. Albright,* 368 Ill.App.3d 214, 306 Ill.Dec. 325, 857 N.E.2d 724, 729–30 (2006). ALT do not satisfy these conditions. First, equitable stockholder status can arise only if stock was issued and no stock was issued here. Second, ALT are not third parties seeking recognition as equitable stockholders, while other parties hold legal title. ALT do not allege that any parties other than themselves were the legal stockholders of RS Group. Therefore, this element of equitable stock ownership, legal ownership by a party other than the party holding equitable ownership, remains unsatisfied, too.

ALT's action cannot go forward. The record clearly demonstrates that ALT were not stockholders of RS Group, which is the only basis for ALT's breach of fiduciary duty suit. The Robertson Stephens Restricted Unit Plan, the essential instrument detailing ALT's means to acquire RS Group stock, as well as judicial estoppel, leave no doubt that ALT possessed no rights as stockholders. Furthermore, ALT find no alternative for relief in their equitable stockholder claim and their one ground for stockholder status, the testimony of Lisa Bisaccia, actually hampers, rather than helps, their case. The court must grant summary judgment in this matter.

*Decision*

Counterdefendants' Motion for Summary Judgment (Docket No. 154) is ALLOWED. This action is hereby DIS-

they admitted to at the summary judgment

MISSED. A separate order of dismissal shall issue.

SO ORDERED.

### ORDER OF DISMISSAL

Pursuant to the Court's Memorandum and Order of December 1, 2009, this action is hereby DISMISSED.

SO ORDERED.